734 So.2d 498 (1999)
J.B., Father of J.B., JR., J.B., P.B., and B.B., Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Appellee.
No. 98-1310.
District Court of Appeal of Florida, First District.
May 14, 1999.
Rehearing Denied June 17, 1999.
*499 Joyce Sibson Dove, Tallahassee, for Appellant.
Charles A. Finkel, Tallahassee, for Appellee.
PADOVANO, J.
This is an appeal from a final order terminating parental rights. The natural father failed to appear at the advisory hearing, and the trial court entered a consent to the termination on his behalf. On appeal, the father contends that he was denied the right to due process of law because he did not receive adequate notice of the advisory hearing. Under the circumstances of this case, we find no violation of the father's due process rights. Therefore we affirm.
The history of this controversy dates back to November 15, 1988, when the state filed a petition to declare each of the natural father's five children dependent. At that time, the father consented to a finding of dependency, and all of the children were placed in the custody of their grandmother. The dependency file was closed in September of 1990, and the children remained with their grandmother.
In May of 1993, the father surrendered his parental rights to one of his children, T.B., with the advice of appointed counsel. The remaining four children were removed from their grandmother's home on August 9, 1995, and placed in foster care. From that point forward, there were seven hearings on various matters, six of which the father failed to attend. One of the hearings he missed was a hearing on May 22, 1996, to discuss a change in the goal from reunification to a termination of parental rights.
The Department of Children and Family Services filed a petition on October 21, 1996, to terminate the father's rights to the four remaining children.[1] This petition was served on the father by personal service in Tallahassee on October 29, 1996, at 7:55 a.m., along with a summons informing the father that he was to attend an advisory hearing on October 30, 1996, at 9:00 a.m. in Tallahassee. Because the father did not attend the advisory hearing or call to explain why he could not attend, the trial court entered a consent on his behalf under the provisions of section 39.462(1)(d), Florida Statutes.
The first hearing the father attended in the course of the termination proceeding *500 was the adjudicatory hearing in December 1996. At that time, the trial court explained that a consent had been entered at the advisory hearing but allowed the father to participate in the hearing. The father informed the court that he had only received twenty-four hours' notice of the prior hearing, that he had not read the petition until later in the week, that he had been sick on the day of the advisory hearing, and that he had only a ninth grade education. He asked the court to appoint counsel on his behalf. The trial court denied this request and declined to continue the case.
Following the adjudicatory hearing, the trial court rendered a final order terminating the father's parental rights. This order was appealed and reversed. In J.B. v. Department of Children and Family Services, 703 So.2d 1208 (Fla. 1st DCA 1997), this court remanded the case to the trial court, allowing the father to "attempt to set aside the consent by default and present evidence at an adjudicatory hearing." Id. at 1210.
A hearing was held in the trial court on March 23, 1998, at which time the court considered the father's request to set aside the consent. The father argued that he had not received reasonable notice of the advisory hearing and that the hearing was fatally flawed because an attorney was not appointed for him. The trial court denied the father's motion because he did not offer any valid excuse for his failure to appear. The court then rendered a second final order terminating the father's parental rights to the children.
The issue on appeal is whether the state deprived the father of his right to due process of law by giving him only twenty-four hours' notice of the advisory hearing. Although the notice should have been served further in advance, we conclude that it was sufficient to meet minimum due process requirements. An advisory hearing in a termination of parental rights case is merely a preliminary step in the process, at which no right is finally adjudicated. A parent is not required to prepare for an advisory hearing or to retain counsel in advance. All that is required of the parent is to appear at the hearing or to inform the court of the need for a postponement. In the present case, the father received the notice of the advisory hearing but did not inform the court that he would be unable to attend. Nor did he seek to excuse his absence at the advisory hearing at any point in the process before the final hearing. For these reasons, we reject the father's claim that he was denied the right to due process of law.
Procedural due process is not evaluated by fixed rules of law, but rather by the requirements of a particular proceeding. This principle has been stated often in the opinions of the United States Supreme Court, most recently in Gilbert v. Homar, 520 U.S. 924, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997). As the Court explained in Cafeteria & Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748 6 L.Ed.2d 1230 (1961), due process, "[u]nlike some legal rules, is not a technical concept with a fixed content unrelated to time, place and circumstances." To the contrary, the Court has consistently held that due process "is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). See also F.D.I.C. v. Mallen, 486 U.S. 230, 108 S.Ct. 1780, 100 L.Ed.2d 265 (1988); Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965).
The amount of notice, like other components of procedural due process, depends on the nature of the proceeding. For example, the amount of notice that is necessary to provide a meaningful opportunity to be heard is not the same for an evidentiary hearing as it is for a status conference. The opportunity to be heard at an evidentiary hearing requires time to *501 secure the attendance of witnesses and to prepare for the presentation of evidence and argument. In contrast, the preparation for a status conference may require little more than an examination of the file. Ample notice should be given in either case, as a matter of courtesy, but the amount of time necessary to provide an opportunity to be heard varies depending on the type of hearing. The notice in the present case was adequate, given the nature of an advisory hearing.
The purpose of an advisory hearing is to ensure that the parties have notice of the petition and that they are informed of their rights. During the hearing, the trial court must (1) determine whether the parent will enter an admission, denial, or consent to the petition; (2) advise the parent of the right to counsel and appoint counsel for the parent if necessary; and (3) appoint a guardian ad litem for the child. See Fla. R. Juv. P. 8.510; § 39.466, Fla. Stat. (1995). The court must then set an adjudicatory hearing within forty-five days, at which time the parties may present evidence and argument as they would in a nonjury trial. An advisory hearing must be conducted as soon as possible after all parties have been served with the petition. See § 39.466(1), Fla. Stat. (1995).
A parent who is served with a petition for termination of parental rights must appear at the advisory hearing or otherwise respond to the notice of the hearing. According to section 39.462(1)(d), Florida Statutes, the failure to respond or appear at an advisory hearing is deemed to be a consent to the petition. This provision is necessary to ensure that the object of the petition is not defeated by the parent's neglect of the proceeding. It enables the trial court to bring a termination of parental rights case to a conclusion even if the parent has chosen not to participate.
The parent's rights are also protected. Section 39.462, Florida Statutes provides that "[b]efore the court may terminate parental rights" the parent must be personally served with a notice of the advisory hearing. See also Fla. R. Juv. P. 8.505(a)(1). Furthermore, this statute requires that the notice include a warning in the following or substantially similar language: "FAILURE TO RESPOND TO THIS NOTICE OR TO APPEAR AT THIS HEARING CONSTITUTES CONSENT TO THE TERMINATION OF PARENTAL RIGHTS OF THIS CHILD (OR THESE CHILDREN)" (Capitals in original). These notice provisions ensure that parental rights will not be terminated without the parent's knowledge and acquiescence. Any parent who is able to read this notice would appreciate the need to appear at the hearing or to respond to the notice in some other way if an appearance is not possible.
Given the nature of an advisory hearing, we conclude that the notice in this case was sufficient. Our decision would surely be different if the notice had been a notice of a final hearing or any other hearing that could reasonably require preparation. See, e.g., Matter of Adoption of Baby James Doe, 572 So.2d 986 (Fla. 1st DCA 1990) (holding that two days' notice of a final hearing on a contested adoption was insufficient); Harreld v. Harreld, 682 So.2d 635 (Fla. 2d DCA 1996) (holding that two days' notice was not sufficient for a final hearing in a contested dissolution of marriage case). As previously explained, however, the purpose of an advisory hearing is to inform the parties of their rights. It is true that the trial court may enter a consent on behalf of an absent parent, but the parent can avoid a decision by consent merely by attending the hearing or by making some kind of response.
There is certainly a great deal at stake in a termination of parental rights case, but the parents are not the only participants who have an important interest. While the termination proceeding is pending, the child must remain in a temporary home, usually foster care or a relative placement. During this time, the child is deprived of the stability that might come *502 by reunification or a chance to be adopted. It would be unfair to the parent if the court were to make a decision in such an important matter without proper notice. It would be equally unfair to the child, however, if the court were to delay this important decision in the child's life merely because the parent has ignored the process.
In this case, the father not only ignored the notice when it was served, but he also failed to notify the court of his desire to contest the petition at any time during the forty-two days that elapsed between the advisory hearing and the adjudicatory hearing. He could have asked the court to withdraw the consent at a much earlier time when it would not have disrupted the orderly progress of the case. If the father had responded to the petition and notice within a reasonable time before the final hearing, the trial court would likely have allowed him to withdraw the consent. However, the trial court could not easily grant such a request made for the first time at the final hearing.
When this case was remanded to the trial court, the father had an opportunity to present evidence and argument in support of his request to withdraw the consent. He offered no evidence or argument except to rely on his earlier position that he was sick and that he had not read the notice. We conclude that the trial court acted within its discretion in denying the request to withdraw the consent on this ground. If the failure to read the notice could excuse a parent's attendance at an advisory hearing, there would be little point in sending the notice in any case.
For these reasons, we conclude that the notice of the advisory hearing was sufficient to satisfy minimum due process requirements. The court terminated parental rights in this case on the basis of the father's consent. This may be a decision the father regrets, but it was nevertheless a decision within his control.
Affirmed.
VAN NORTWICK, J., CONCURS.
BENTON, J., dissents with written opinion.
BENTON, J., dissenting.
Because their father did not appear at an advisory hearing, the court below ordered consent by default to termination of parental rights as to four children, and later declined to set the default aside. Given these consequences for not attending the hearing, the "issue on appeal is whether the state deprived the father of his right to due process of law by giving him only twenty-four[[2]] hours' notice of the advisory hearing." Ante at 500. We have never before allowed termination of parental rights for failure to respond to notice coming as late as this did. See In re Adoption of Baby James Doe, 572 So.2d 986, 990 (Fla. 1st DCA 1990). In my view, such short notice was constitutionally inadequate.
"The manner in which due process protections apply var[ies] with the character of the interests and the nature of the process involved." Department of Law Enforcement v. Real Property, 588 So.2d 957, 960 (Fla.1991). The Department was not acting in response to an emergency. Cf. § 39.401, Fla. Stat. (1997). The father did not have custody of the children at the time. They were in foster care. The Department's interest in proceeding so abruptly on such an important matter is by no means clear.
On the other hand, "[n]atural parents have a fundamental liberty interest in the care, custody, and management of their children." S.Q. v. Department of Health and Rehabilitative Servs., 687 So.2d 319, *503 323 (Fla. 1st DCA 1997). Our supreme court has recognized
a constitutionally protected interest in preserving the family unit and raising one's children. Moore v. East Cleveland, 431 U.S. 494, 97 S.Ct. 1932, 52 L.E.2d 531 (1977); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).
In the Interest of D.B., 385 So.2d 83, 90 (Fla.1980); see also In the Interest of R.W., 495 So.2d 133, 134-35 (Fla.1986).
The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State.... [P]ersons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.
Santosky v. Kramer, 455 U.S. 745, 753-54, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The importance of the rights at stake in the present case cannot be overstated.
Inadequate notice rendered what would otherwise have been fair procedures constitutionally deficient. As the trial court observed, Florida has
no statute or rule that sets a minimum time between service and the advisory hearing. On the contrary, by rule and by statute, "An advisory hearing ... must be held as soon as possible after... serv[ice]...." Section 39.466(1), Florida Statutes (199[5]).
But the statute must be construed to require constitutionally reasonable notice.[3]See generally, e.g., Dawson v. Saada, 608 So.2d 806, 808 (Fla.1992); Real Property, 588 So.2d at 959-60 (upholding statute as "facially constitutional provided that it is applied consistent with the minimal due process requirements of the Florida Constitution").
The interests at stake here required more than a day's notice. Cf. Fla. R. Juv. P. 8.225 (requiring 72 hours' notice even for a hearing at which only temporary custody is at issue). The failure to construe *504 the statute to require more notice, while treating the father's non-appearance as a default, deprived the father of rights to procedural due process guaranteed by the state and federal constitutions. U.S. Const. amend. XIV, § 1; Art. I, § 9, Fla. Const.; Goldberg v. Kelly, 397 U.S. 254, 262-263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) ("The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be `condemned to suffer grievous loss.'"); Scull v. State, 569 So.2d 1251, 1252 (Fla.1990) ("essence of due process is... fair notice and a reasonable opportunity to be heard").
What process is due and what notice is reasonable depend on particular circumstances. Less time is necessary to prepare for an advisory hearing than for an evidentiary hearing, to be sure. But deciding what is reasonable "notice should contemplate all factors involved and [notice] should be conveyed in a manner reasonably calculated to facilitate the ability of the opposing party to appear and be heard." Town of Jupiter v. Andreff, 656 So.2d 1374, 1377 (Fla. 1st DCA 1995). See Dawson, 608 So.2d at 808.
One factor involved here is that the father did not have a lawyer in the trial court until proceedings on remand. See generally § 39.807, Fla. Stat. (Supp.1998); Fla. R. Juv. P. 8.515; Lassiter v. Department of Social Servs. of Durham County, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); In the Interest of D.B., 385 So.2d 83 (Fla.1980); J.B. v. Department of Children and Family Servs., 703 So.2d 1208 (Fla. 1st DCA 1997); O.A.H. v. R.L.A., 712 So.2d 4, 5-7 (Fla. 2d DCA 1998); McKenzie v. Department of Health and Rehabilitative Servs., 663 So.2d 682, 683-684 (Fla. 5th DCA 1995).
On remand after the prior appeal, the trial court apparently found (as the father has consistently contended) that the father did not actually read the notice until the hearing at which his parental rights were deemed forfeit had taken place:
[J.B.] is a competent adult who can read. The summons was simple and complied with all statutory and rule requirements.... [J.B.] acknowledged he was served the day before the advisory [hearing], but claimed he was "sick," but he didn't call or even try to call anyone to say he was ill, either before, during, or after[[4]] the advisory.... He admitted he never even read the papers when he was served and did not read them in the 25 hours prior to the hearing, stating "there wasn't enough time." ... This is not credible or excusable.
(Emphasis in the original.) If the Department had simply served the petition at the same time it filed it, notice would have been more than adequate, and a day's illness or inattention could not have made a difference.
The majority opinion quite correctly identifies unwarranted delay as an evil to be avoided in cases of this kind. (The failure to appoint counsel when the father requested counsel on December 11, 1996, and the failure to conduct a full hearing on the merits promptly thereafter precipitated two appeals[5] and occasioned significant additional delay.) We can only hope that the Department and others saw to the children's best interests between November 15, 1988, when the Department initiated *505 dependency proceedings, and October 29, 1996, the day it served the petition for termination of parental rights, notifying the father of the advisory hearing. Several years passed before the Department gave the father scarcely a day's notice of the hearing at which his parental rights were effectively extinguished.
One or two days' notice has been held insufficient when much less important interests were at stake. See Montgomery v. Cribb, 484 So.2d 73, 75 (Fla. 2d DCA 1986) (holding two days' notice of hearing on motion to strike unreasonable); Henzel v. Golstein, 349 So.2d 824, 825 (Fla. 3d DCA 1977) (holding one working day's notice of hearing on motion to dismiss inadequate); Reynolds v. Reynolds, 187 So.2d 372, 373 (Fla. 2d DCA 1966) (holding plaintiff had been denied due process of law by only one day's notice of a hearing on an order to show cause why she should not be held in contempt). See generally Holmes v. State, 731 So.2d 92 (Fla 1st DCA 1999); Harreld v. Harreld, 682 So.2d 635, 637 (Fla. 2d DCA 1996); Goral v. State, 553 So.2d 1282 (Fla. 3d DCA 1989). Because the father did not receive adequate notice of the advisory hearinggiven that his failure to attend it occasioned the loss of his parental rightsI respectfully dissent from today's affirmance.
NOTES
[1] At that time the agency was known as the Department of Health and Rehabilitative Services.
[2] The petition for termination of parental rights was served "on October 29, 1996, at 7:55 a.m., along with a summons informing the father that he was to attend an advisory hearing on October 30, 1996, at 9:00 a.m." Ante at 499.
[3] Other states have enacted statutes specifying that notice must be give some minimum number of days before a proceeding at which parental rights are terminated. See Ariz.Rev. Stat. Ann. § 8-863(A) (West 1998) (requiring service at least 10 days before initial hearing on petition to terminate parental rights); Cal. Welf. & Inst.Code § 366.23(a) (West 1998) (requiring state agency to provide 45 days' notice of hearing and 15 days' notice of any recommendation to terminate parental rights); Conn. Gen.Stat. § 45a-716(c) (1998) (requiring service at least 10 days before the hearing on termination of parental rights); Ga.Code Ann. § 15-11-83(c) (1998) (at least 30 days' notice); Haw.Rev.Stat. § 571-61(b)(3) (1998) (at least 20 days' notice); Idaho Code § 16-1607(a) & (f) (1998) (at least 48 hours' notice); Ill.Rev.Stat. ch. 37 para. 802-15(5) (1998) (at least 3 days' notice); Ind. Code § 31-35-2-6.5(b) (1998) (at least 5 days' notice); Iowa Code § 232.112 (1998) (not less than 7 days' notice); La. Child. Code art. 1021 (West 1998) (at least 5 days' notice); Me.Rev.Stat. Ann. tit. 22 § 4053 (West 1998) (10 days); Mich. Comp. Laws § 712A.19b(2) (1998) (14 days); Minn.Stat. § 260.231(3) (1998) (10 days); Miss.Code Ann. § 93-15-105(1) (1998) (30 days); Mont.Code. Ann. § 41-3-401(4) (1998) (5 working days); Neb. Rev.Stat. § 43-268(3) (1998) (requiring personal service at least 72 hours before the hearing with the proviso that, upon cause shown, the court shall grant additional time to prepare for the hearing); N.H.Rev.Stat. Ann. § 170-C:7 (1998) (stating that the hearing cannot take place sooner than 20 days after service of notice); N.M. Stat. Ann. § 32A-4-29(H) (Michie 1998) (at least 30 days' notice); N.Y. Fam. Ct. Act § 617(a) (McKinney 1998) (at least 20 days' notice); Okla. Stat. tit. 10 § 7006-1.2(A)(1) (1998) (at least 15 calendar days' notice); Utah Code Ann. § 78-3a-406(2) (1998) (stating a hearing can be held no sooner than 10 days after service is complete); W. Va.Code § 49-3-1(c)(1) (1998) (at least 20 days' notice).
[4] At the hearing that followed the advisory hearing, the father appeared pro se to oppose termination of his parental rights. The trial court faulted the father for not contacting the court immediately after missing the advisory hearing. But the father was not represented by counsel during this period.
[5] We held in J.B. v. Department of Children and Family Services, 703 So.2d 1208, 1210 (Fla. 1st DCA 1997), that the trial court erred in ruling on December 11, 1996, that the father did not "qualify for a court appointed lawyer given ... the lateness of the ... request." We reversed with directions that "the father should be allowed to attempt to set aside the consent by default and present evidence at an adjudicatory hearing." Id.