768 So.2d 1060 (2000)
J.B., Petitioner,
v.
FLORIDA DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Respondent.
No. SC95890.
Supreme Court of Florida.
September 28, 2000.
*1062 Joyce Sibson Dove, Tallahassee, Florida, for Petitioner.
Charles A. Finkel, District Legal Counsel, Tallahassee, Florida, for Respondent.
HARDING, J.
We have for review J.B. v. Department of Children & Family Services, 734 So.2d 498 (Fla. 1st DCA 1999), on the basis of express and direct conflict with a number of other district court cases which hold that important rights cannot be adjudicated when a party has received only twenty-four hours' notice of the hearing.[1] We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

FACTS
As stated in the First District's opinion, the facts of this case are as follows:
The history of this controversy dates back to November 15, 1988, when the state filed a petition to declare each of the natural father's five children dependent. At that time, the father consented to a finding of dependency, and all of the children were placed in the custody of their grandmother. The dependency file was closed in September of 1990, and the children remained with their grandmother.
In May of 1993, the father surrendered his parental rights to one of his children, T.B., with the advice of appointed counsel. The remaining four children were removed from their grandmother's home on August 9, 1995, and placed in foster care. From that point forward, there were seven hearings on various matters, six of which the father failed to attend. One of the hearings he missed was a hearing on May 22, 1996, to discuss a change in the goal from reunification to a termination of parental rights.
The Department of Children and Family Services filed a petition on October 21, 1996, to terminate the father's rights to the four remaining children. This petition was served on the father by personal service in Tallahassee on October 29, 1996, at 7:55 a.m., along with a summons informing the father that he was to attend an advisory hearing on October 30, 1996, at 9:00 a.m. in Tallahassee. Because the father did not attend the advisory hearing or call to explain why he could not attend, the trial court entered a consent on his behalf under the provisions of section 39.462(1)(d), Florida Statutes [(1995)].
The first hearing the father attended in the course of the termination proceeding was the adjudicatory hearing in December 1996. At that time, the trial court explained that a consent had been entered at the advisory hearing but allowed the father to participate in the hearing. The father informed the court that he had only received twenty-four hours' notice of the prior hearing, that he had not read the petition until later in the week, that he had been sick on the day of the advisory hearing, and that he had only a ninth grade education. He asked the court to appoint counsel on his behalf. The trial court denied this request and declined to continue the case.
Following the adjudicatory hearing, the trial court rendered a final order terminating the father's parental rights. This order was appealed and reversed. In J.B. v. Department of Children and Family Services, 703 So.2d 1208 (Fla. 1st DCA 1997), this court remanded the case to the trial court, allowing the father to "attempt to set aside the consent by default and present evidence at an adjudicatory hearing." Id. at 1210.
A hearing was held in the trial court on March 23, 1998, at which time the *1063 court considered the father's request to set aside the consent. The father argued that he had not received reasonable notice of the advisory hearing and that the hearing was fatally flawed because an attorney was not appointed for him. The trial court denied the father's motion because he did not offer any valid excuse for his failure to appear. The court then rendered a second final order terminating the father's parental rights to the children.
J.B., 734 So.2d at 499-500 (footnote omitted).
The father appealed the second final order terminating parental rights to the district court, arguing that his due process rights were violated because he did not receive adequate notice of the advisory hearing. The district court concluded that although the notice should have been served further in advance, the twenty-four hours' notice was sufficient to meet minimum due process requirements:
An advisory hearing in a termination of parental rights case is merely a preliminary step in the process, at which no right is finally adjudicated. A parent is not required to prepare for an advisory hearing or to retain counsel in advance. All that is required of the parent is to appear at the hearing or to inform the court of the need for a postponement. In the present case, the father received the notice of the advisory hearing but did not inform the court that he would be unable to attend. Nor did he seek to excuse his absence at the advisory hearing at any point in the process before the final hearing.
Id. at 500. Accordingly, the district court held that there was no violation of the father's due process rights and affirmed the lower court's ruling. Id. at 502.
On review, the father asserts that his parental rights were terminated without full substantive and procedural due process protections. Specifically, he argues that (1) twenty-four hours' notice of the advisory hearing was insufficient to protect his due process rights; (2) the consent by default provision contained in section 39.462(1)(d), Florida Statutes (1995), is facially unconstitutional; and (3) the trial court's failure to appoint counsel during the December 11, 1996, adjudicatory hearing was in error. For the reasons expressed below, we hold that twenty-four hours' notice of an advisory hearing is insufficient to satisfy minimum due process requirements. We also find that the trial judge was in error for failing to appoint counsel during the adjudicatory hearing, which likewise resulted in a violation of the father's due process guarantees. However, we do not agree with the father's contention that the consent by default provision is facially unconstitutional.

ANALYSIS

Due Process
As stated by this Court in Department of Law Enforcement v. Real Property, 588 So.2d 957 (Fla.1991):
The basic due process guarantee of the Florida Constitution provides that "[n]o person shall be deprived of life, liberty or property without due process of law." Art. I, § 9, Fla. Const. Substantive due process under the Florida Constitution protects the full panoply of individual rights from unwarranted encroachment by the government. To ascertain whether the encroachment can be justified, courts have considered the propriety of the state's purpose; the nature of the party being subjected to state action; the substance of that individual's right being infringed upon; the nexus between the means chosen by the state and the goal it intended to achieve; whether less restrictive alternatives were available; and whether individuals are ultimately being treated in a fundamentally unfair manner in derogation of their substantive rights....
Procedural due process serves as a vehicle to ensure fair treatment through the proper administration of justice *1064 where substantive rights are at issue. Procedural due process under the Florida Constitution guarantees to every citizen the right to have that course of legal procedure which has been established in our judicial system for the protection and enforcement of private rights. It contemplates that the defendant shall be given fair notice[] and afforded a real opportunity to be heard and defend [] in an orderly procedure, before judgment is rendered against him.
The manner in which due process protections apply vary with the character of the interests and the nature of the process involved. There is no single, inflexible test by which courts determine whether the requirements of procedural due process have been met.
Id. at 960 (emphasis added) (citations omitted).
The significance of the rights at issue here cannot be overstated. In Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), the United States Supreme Court considered termination of parental rights procedures under New York law. At issue in Santosky was whether the "fair preponderance of the evidence" standard prescribed by the New York Family Court Act for the termination of parental rights violated the parents' due process rights. 455 U.S. at 747, 102 S.Ct. 1388. The Santosky Court made it clear that state intervention to terminate parental rights must be accomplished by procedures meeting the requisites of due process. As the Santosky Court explained, it is
"plain beyond the need for multiple citation" that a natural parent's "desire for and right to `the companionship, care, custody, and management of his or her children'" is an interest far more precious than any property right.... "A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore, a commanding one."
455 U.S. at 758, 102 S.Ct. 1388 (quoting Lassiter v. Department of Social Services, 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981)). Moreover, the Supreme Court stated that the fundamental liberty interest a parent has in the custody and care of his or her child "does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." Id. at 753, 102 S.Ct. 1388.
While there is no laundry list of specific procedures that must be followed to protect due process guarantees, an analysis of the United States Supreme Court's prior decisions identifies certain procedures that are typically required before an individual can be deprived of a property or liberty interest. In all situations, the Court has required fair procedures and an unbiased decisionmaker. Additionally, the Court has also required notice of the government's action and an opportunity to respond before termination of the interest. See id.; see also Goldberg v. Kelly, 397 U.S. 254, 264, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (holding that due process requires an evidentiary hearing prior to the termination of welfare assistance because termination "may deprive an eligible recipient of the very means by which to live"). However, in some instances the Court has allowed a post-deprivation hearing in situations where a predeprivation hearing would be impracticable. See Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

Statutory Scheme
The statutory framework governing this case is found in chapter 39, Florida Statutes (1995), which includes provisions concerning termination of parental rights. Chapter 39 was enacted "[t]o provide judicial and other procedures to assure due process through which children and other interested parties are assured fair hearings... and the recognition, protection, and enforcement of their constitutional and other legal rights." § 39.001, Fla. Stat. (1995). Pursuant to chapter 39, parental *1065 rights can only be terminated under certain circumstances. See § 39.464, Fla. Stat. (1995) (stating grounds for termination of parental rights include voluntary relinquishment, abandonment, severe or continuing abuse or neglect, and egregious abuse).
Additionally, the Legislature has provided certain procedural safeguards to termination proceedings: Affected parties must be served notice and a copy of the petition for termination of parental rights. § 39.462(1)(a), Fla. Stat. (1995). This section also requires that the notice contain cautionary language warning the recipient that his or her failure to respond or appear will result in consent by default.[2] Section 39.466, Florida Statutes (1995), requires that the trial court first hold an advisory hearing on the petition to terminate parental rights. This hearing is held to inform the parties of their rights under section 39.465, Florida Statutes (1995), and to set a date for the adjudicatory hearing. See § 39.466, Fla. Stat. (1995). There is no requirement that service of process be made within a certain time prior to the advisory hearing, although section 39.466 does require that the advisory hearing "must be held as soon as possible after all parties have been served." A person's failure to respond or appear at the advisory hearing constitutes that person's consent to the termination of parental rights. See § 39.462(1)(d), Fla. Stat. (1995).[3] Within forty-five days after the advisory hearing, an adjudicatory hearing must be held where the "court shall consider the elements required for termination as set forth in s. 39.4611," and "[e]ach of these elements must be established by clear and convincing evidence before the petition is granted." § 39.467(1)-(2), Fla. Stat. (1995). At the conclusion of the adjudicatory hearing, the judge must enter a written order explaining the relevant findings of fact and conclusions of law. See § 39.467(5), Fla. Stat. (1995). Any party affected by the order of the court may appeal to the appropriate district court of appeal. See § 39.473, Fla. Stat. (1995). Further, the court is required to advise the parent, guardian, or custodian of the right to counsel at each stage of the proceeding. See § 39.465(1)(a), Fla. Stat. (1995). Therefore, it is clear that Florida law does not take lightly the termination of parental rights and provides due process safeguards.
In its opinion, the district court correctly recognizes that unwarranted delay is an evil that should be avoided in termination of parental rights proceedings. See J.B., 734 So.2d at 501. As a result of the backlog inherent in termination cases, many children are left in legal limbo as their custody status is argued in the courts. Additionally, these proceedings place a tremendous cost and hardship on the State. In response, the Legislature has attempted to resolve this monumental burden by enacting legislation which swiftly moves these cases toward resolution, while at the *1066 same time guarding the rights and liberties of the parties involved.

Twenty-four Hours' Notice
Section 39.466(1) attempts to facilitate termination proceedings by requiring that the advisory hearing be held "as soon as possible after all parties have been served." While this section does not specify how much time is required for service of process prior to the advisory hearing, we must construe the statute to require constitutionally reasonable notice. See, e.g., Dawson v. Saada, 608 So.2d 806, 808 (Fla. 1992); Department of Law Enforcement v. Real Property, 588 So.2d 957, 959-60 (holding statute constitutional provided it is applied consistent with minimum due process requirements). See also Van Bibber v. Hartford Accident & Indem. Ins. Co., 439 So.2d 880 (Fla.1983); State v. Stalder, 630 So.2d 1072 (Fla.1994).
The district court focused on the fact that an "advisory hearing ... is merely a preliminary step in the process, at which no right is finally adjudicated," and concluded that "[g]iven the nature of an advisory hearing, ... the notice in this case was sufficient." J.B., 734 So.2d at 500-01. However, the court acknowledged that its "decision would surely be different if the notice had been a notice of a final hearing or any other hearing that could reasonably require preparation." Id. at 501.
Given that the father's failure to appear at the advisory hearing resulted in the trial court's entering a consent by default pursuant to section 39.462(1)(d), the advisory hearing in this case was in effect a de facto adjudicatory hearing, which resulted in the termination of his parental rights. There is no evidence that such short notice was necessitated by any emergency or potential danger to the children.
The district court also suggests that any harm caused by the insufficient notice was cured by the fact that the father was given an appeal to contest the consent: "When this case was remanded to the trial court, the father had an opportunity to present evidence and argument in support of his request to withdraw the consent." J.B., 734 So.2d at 502. However, according to the district court's opinion, the father's motion to set aside the consent by default was denied because the father "did not offer any valid excuse for his failure to appear." Id. at 500 (emphasis added). Therefore, it appears that the only issue the father was able to address during appeal was his failure to attend the advisory hearing, and he never received a meaningful opportunity to contest the termination of parental rights issue.
Under these circumstances, we cannot agree with the district court's conclusion that twenty-four hours' notice was sufficient.[4] Instead, we are persuaded by Judge Benton's dissenting opinion, wherein he stated that "[t]he [trial court's] failure to construe the statute to require more notice, while treating the father's non-appearance as a default, deprived the father of rights to procedural due process guaranteed by the state and federal constitutions." J.B., 734 So.2d at 503-04 (Benton, J. dissenting). In that one or two days' notice has been held insufficient when much less important interests were at stake,[5] we hold that the fundamental rights involved here demand more than a mere *1067 twenty-four hours' notice.[6]

Consent by Default
By this decision we are not, however, holding that a consent by default can never be entered at an advisory hearing. As the First District stated:
This provision is necessary to ensure that the object of the petition is not defeated by the parent's neglect of the proceeding. It enables the trial court to bring a termination of parental rights case to conclusion even if the parent has chosen not to participate.
J.B., 734 So.2d at 501. Furthermore, section 39.462(1)(a) requires that the notice of advisory hearing clearly inform affected persons that their failure to appear at the advisory hearing constitutes a consent to the termination of parental rights.[7] Therefore, had adequate notice been given in this case, the entering of a consent by default would not have been in error.

Right to Counsel
According to the record, the father indicated that he wanted representation during the December 11, 1996, hearing but was not provided representation until the appeal. This Court has required the appointment of counsel for indigent parents when permanent termination of parental rights may result. See In re D.B., 385 So.2d 83, 90-91 (Fla.1980). See also Department of Children & Family Servs. v. Natural Parents of J.B., 736 So.2d 111, 113 (Fla. 4th DCA 1999) (holding that "[p]arents are entitled to appointed counsel at public expense in [termination of parental rights] proceedings"), review granted, No. SC96171, 761 So.2d 330 (Fla. Feb. 16, 2000); In re D.F., 622 So.2d 1102, 1105 (Fla. 1st DCA 1993) (finding that at *1068 each stage of a dependency proceeding the trial court shall advise the parents of the right to counsel and, if indigent, the right to court-appointed counsel). Likewise, section 39.465(1)(a) and Florida Rule of Juvenile Procedure 8.320 clearly provide that a parent is entitled to the assistance of counsel. Moreover, rule 8.320(b)(3) clearly states:
If a waiver is accepted at any stage of the proceedings, the offer of assistance of counsel shall be renewed by the court at each subsequent stage of the proceedings at which the party appears without counsel.

(Emphasis added.)
The right to counsel in termination of parental rights cases is part of the process designed to ensure that the final result is reliably correct. See Department of Children & Family Servs. v. Natural Parents of J.B., 736 So.2d 111, 117 (Fla. 4th DCA 1999). The father should have been provided counsel before the court proceeded with the adjudicatory hearing. In fact, section 39.467(2) provides for a continuance for the purpose of procuring counsel. As the United States Supreme Court stated in Eldridge, "[t]he fundamental requirement of due process is the opportunity to be heard `at a meaningful time and in a meaningful manner.'" 424 U.S. at 333, 96 S.Ct. 893 (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). See also Grannis v. Ordean, 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914). While the father may have waived his right to counsel by not appearing at the advisory hearing, it was clear from his testimony during the December 11, 1996, hearing that he expressed a desire to have counsel appointed at that time. Therefore, for the adjudicatory hearing it cannot be said that the father "knowingly and intelligently" waived his right to counsel as required by section 39.465(1)(a).
In order to adhere to the principles of due process, the trial court should have advised the father of his right to counsel and had counsel appointed before proceeding with the hearing. Therefore, we hold that the trial court's failure to do so was in error and a violation of the father's due process rights.

CONCLUSION
This case provides a particularly cogent example of the fact that there is a great deal at stake in termination of parental rights cases. It is troublesome to this Court that these children have been in legal limbo since 1988. During this time, the children have been deprived of the stability that might come with reunification or a chance to be adopted. Even though the father has not been a model parent, he retains a vital interest in preventing the termination of his parental rights: "If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs." Santosky, 455 U.S. at 753, 102 S.Ct. 1388. Therefore, we conclude that by providing a mere twenty-four hours' notice for the advisory hearing and failing to appoint counsel for the adjudicatory hearing, the trial court deprived the father of the due process of law guaranteed by the Florida and federal constitutions. However, we do not find that the consent by default provision contained in section 39.462(1)(d) is unconstitutional.
Accordingly, we quash the decision of the district court of appeal and remand for proceedings consistent with this opinion.
It is so ordered.
LEWIS and QUINCE, JJ., concur.
ANSTEAD, J., concurs in result only.
WELLS, C.J., dissents with an opinion, in which SHAW, J., concurs.
PARIENTE, J., dissents with an opinion.
*1069 WELLS, C.J., dissenting.
Although I certainly agree that the rights at stake in this proceeding are fundamental and precious, I conclude that the district court's majority reached the correct decision for the right reasons. I cannot agree that due process requires courts to ignore the plain reality so as to benefit a neglectful parent and keep children's family status in litigation endlessly.
The litigation involving this father's five children had been ongoing for almost eight years when this father was served with the notice on October 29, 1996. Four of the children had been placed in foster care more than a year earlier. Since August 1995, there had been seven hearings in respect to these children; the father had missed six of them. Surely these children had a right to expect their father, when served with notice of another hearing concerning them, to read it and act upon it. To this date, the father has provided no excusable reason that he did not do so. To now continue this litigation because of this father's demonstrated inexcusable neglect is detrimental on its face to these children and to all other children who are similarly situated in legal limbo.
Judge Padovano made essential points in his district court opinion:
There is certainly a great deal at stake in a termination of parental rights case, but the parents are not the only participants who have an important interest. While the termination proceeding is pending, the child must remain in a temporary home, usually foster care or a relative placement. During this time, the child is deprived of the stability that might come by reunification or a chance to be adopted. It would be unfair to the parent if the court were to make a decision in such an important matter without proper notice. It would be equally unfair to the child, however, if the court were to delay this important decision in the child's life merely because the parent has ignored the process.

In this case, the father not only ignored the notice when it was served, but he also failed to notify the court of his desire to contest the petition at any time during the forty-two days that elapsed between the advisory hearing and the adjudicatory hearing. He could have asked the court to withdraw the consent at a much earlier time when it would not have disrupted the orderly progress of the case. If the father had responded to the petition and notice within a reasonable time before the final hearing, the trial court would likely have allowed him to withdraw the consent. However, the trial court could not easily grant such a request made for the first time at the final hearing.
When this case was remanded to the trial court, the father had an opportunity to present evidence and argument in support of his request to withdraw the consent. He offered no evidence or argument except to rely on his earlier position that he was sick and that he had not read the notice. We conclude that the trial court acted within its discretion in denying the request to withdraw the consent on this ground. If the failure to read the notice could excuse a parent's attendance at an advisory hearing, there would be little point in sending the notice in any case.
J.B. v. Department of Children & Family Servs., 734 So.2d 498, 501-02 (Fla. 1st DCA 1999) (emphasis added). I would approve this decision by the district court majority, which is composed of judges who have substantial experience and widely respected expertise in family law and indigency issues, and the final order of the trial judge, who likewise has substantial experience and expertise in family law.
SHAW, J., concurs.
PARIENTE, J. dissenting.
I would approve Judge Padavono's majority opinion. I would also point out that in the future, changes in the statutes governing dependency proceedings should *1070 eliminate the problem that arose in this case.
NOTES
[1] See Harreld v. Harreld, 682 So.2d 635 (Fla. 2d DCA 1996); Montgomery v. Cribb, 484 So.2d 73 (Fla. 2d DCA 1986); Henzel v. Golstein, 349 So.2d 824 (Fla. 3d DCA 1977); Reynolds v. Reynolds, 187 So.2d 372 (Fla. 2d DCA 1966).
[2] Specifically, section 39.462(1)(a) requires:

The document containing the notice to respond or appear must contain, in type at least as large as the balance of the document, the following or substantially similar language: "FAILURE TO RESPOND TO THIS NOTICE OR TO APPEAR AT THIS HEARING CONSTITUTES CONSENT TO THE TERMINATION OF PARENTAL RIGHTS OF THIS CHILD (OR THESE CHILDREN)."
§ 39.462(1)(a), Fla. Stat. (1995).
[3] Amended by chapter 99-193, § 42, Law of Florida, the consent by default provision now states:

If the person served with notice under this section fails to personally appear at the advisory hearing, the failure to personally appear shall constitute consent for termination of parental rights by the person given notice. If a parent appears for the advisory hearing and the court orders that parent to personally appear at the adjudicatory hearing for the petition for termination of parental rights, stating the date, time, and location of said hearing, then failure of that parent to personally appear at the adjudicatory hearing shall constitute consent for termination of parental rights.
§ 39.801(3)(d), Fla. Stat. (1999) (emphasis added).
[4] It is clear from the facts of this case that the father did not read the notice until well after the advisory hearing, nor did he contact the court in an effort to obtain a continuance. The father's inattention and failure to act is troublesome; nonetheless, we hold that 24 hours' notice is insufficient as a matter of law.
[5] See Montgomery v. Cribb, 484 So.2d 73, 75 (Fla. 2d DCA 1986) (holding two days' notice of hearing on motion to strike unreasonable); Henzel v. Golstein, 349 So.2d 824, 825 (Fla. 3d DCA 1977) (holding 24 hours' notice of hearing on motion to dismiss inadequate); Reynolds v. Reynolds, 187 So.2d 372, 373 (Fla. 2d DCA 1966) (holding plaintiff had been denied due process of law by only 24 hours' notice of a hearing on an order to show cause why she should not be held in contempt).
[6] For termination of parental rights proceedings in other states, those states' statutes specify that notice must be given a minimum number of days prior to a proceeding at which parental rights are terminated. See Ariz.Rev.Stat. Ann. § 8-863(A) (West 1998) (requiring service at least 10 days before initial hearing on petition to terminate parental rights); Cal. Welf. & Inst.Code § 366.23(a) (West 1998) (requiring state agency to provide 45 days' notice of hearing and 15 days' notice of any recommendation to terminate parental rights); Conn. Gen.Stat. § 45a-716(c) (1998) (requiring service at least 10 days before the hearing on termination of parental rights); Ga.Code Ann. § 15-11-83(c) (1998) (at least 30 days' notice); Haw.Rev.Stat. § 571-61(b)(3) (1998) (at least 20 days' notice); Idaho Code § 16-1607(a) & (f) (1998) (at least 48 hours' notice); § 705 Ill. Comp. Stat. 405/2-15 (2000) (Illinois statute requiring at least 3 days' notice); Ind.Code § 31-35-2-6.5(b) (2000) (at least 10 days' notice); Iowa Code § 232.112 (1998) (requiring not less than seven days' notice for personal service, and 14 days' notice for service by certified mail); La. Child. Code art. 1021 (West 1998) (at least five days' notice); Me.Rev.Stat. Ann. tit. 22 § 4053 (West 1998) (10 days); Mich. Comp. Laws § 712A.19b(2) (1998) (14 days); Minn. Stat. § 260C.307 (2000) (10 days); Miss.Code Ann. § 93-15-105(1) (1998) (30 days); Mont. Code. Ann. § 41-3-401(4) (1998) (five working days); Neb.Rev.Stat. § 43-268(3) (1998) (requiring personal service at least 72 hours before the hearing with the proviso that, upon cause shown, the court shall grant additional time to prepare for the hearing); N.H.Rev. Stat. Ann. § 170-C:7 (1998) (stating that the hearing cannot take place sooner than 20 days after service of notice); N.M. Stat. Ann. § 32A-4-29(H) (Michie 1998) (at least 30 days' notice); N.Y. Fam. Ct. Act § 617(a) (McKinney 1998) (at least 20 days' notice); Okla. Stat. tit. 10 § 7006-1.2(A)(1) (1998) (at least 15 calendar days' notice); Utah Code Ann. § 78-3a-406(2) (1998) (stating a hearing can be held no sooner than 10 days after service is complete); W. Va.Code § 49-3-1(c)(1) (1998) (at least 20 days' notice).
[7] In fact, the 1999 amendment to this statute provides even more precautions to ensure that the parent is clearly advised of the consequences of his or her failure to appear. Amended by chapter 99-193, § 42, Laws of Florida, the notice is now required to contain the following cautionary language:

"FAILURE TO PERSONALLY APPEAR AT THIS ADVISORY HEARING CONSTITUTES CONSENT TO THE TERMINATION OF PARENTAL RIGHTS OF THIS CHILD (OR CHILDREN). IF YOU FAIL TO APPEAR ON THE DATE AND TIME SPECIFIED, YOU MAY LOSE ALL LEGAL RIGHTS AS A PARENT TO THE CHILD OR CHILDREN NAMED IN THE PETITION ATTACHED TO THIS NOTICE."
§ 39.801(3)(a), Fla. Stat. (1999) (emphasis added).