LEWIS, J.,
concurring in result only.
This Court has recognized a constitutionally protected interest in the context of juvenile dependency proceedings, and the important fundamental nature of the interest at risk when permanent termination of parental rights might result. We have held that the fundamental interest at stake requires procedural safeguards and the appointment of counsel for indigents under due process considerations commensurate with those granted criminal defendants and individuals subject to civil commitment. See Pullen v. State, 802 So.2d 1113 (Fla.2001); In re D.B., 385 So.2d 83 (Fla.1980); see also J.B. v. Florida Dep’t of Children & Family Servs., 768 So.2d 1060 (Fla.2000). While the right to counsel may flow from, and have its origins in, the Sixth Amendment in the criminal context and concepts of due process under the United States and Florida Constitutions in the dependency arena, the goal to be achieved is the participation of counsel acting as competent counsel. Although it may be argued that the Sixth Amendment right to counsel may be somewhat distinguished from the right to counsel in dependency proceedings flowing from due process considerations, in that the extent of protections may vary with the character of the interest and nature of the proceeding involved, the underlying substantive constitutional requirement of substantial equality and fair process can only be realized when counsel is performing as an active advocate. This Court made no distinctions when it announced the governmental obligation to provide counsel when constitutionally required to do so in the dependency context. See D.B., 385 So.2d at 90-91.
The concept at issue in Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), was a concern with the extent of the duty of court-appointed appellate counsel, and the result was not dictated simply by the source of the appointment. The Anders Court reasoned:
The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of ami-cus curiae. The no-merit letter and the *905 procedure it triggers do not reach that dignity. Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court. His role as advocate requires that he support his client’s appeal to the best of his ability.
Id. at 744, 87 S.Ct. 1396 (footnote omitted). The power of Anders, which should be no less controlling here, counsels that:
This procedure will assure penniless defendants the same rights and opportunities on appeal — as nearly as is practicable — as are enjoyed by those persons who are able to afford the retention of private counsel.
Id. at 745, 87 S.Ct. 1396. I do not agree with the majority that the alleged putative administrative burden of Anders-type procedures in the direct appeal of permanent parental rights terminations is so onerous that it must trump fundamental due process constitutional rights. If the rights and interests are identified as deserving the same constitutional protection with the right to appointed counsel, it is the procedure that should be analyzed, not the process denied. I conclude that principles of constitutional consistency should mandate the granting of Anders-type protections in permanent parental rights termination appeals, and would so hold in the instant case. The evil to be addressed is the lack of equality in the process.
The United States Supreme Court has made it clear many times that the “interest of parents in the care, custody, and control of their children ... is perhaps the oldest of the fundamental liberty interests recognized.” Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). This interest, which emanates from the fundamental right to privacy, is “among associational rights [the U.S. Supreme] Court has ranked as of basic importance in our society, rights sheltered by the Fourteenth Amendment against the State’s unwarranted usurpation, disregard, or disrespect.” M.L.B. v. S.L.J., 519 U.S. 102, 116, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996) (citation and internal quotation marks omitted); see also Moore v. City of East Cleveland, 431 U.S. 494, 503-04, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). We have echoed the pronouncements of the U.S. Supreme Court when deciding cases which concern the fundamental rights of parents with regard to their children. See, e.g., J.B. v. Florida Dep’t of Children & Family Servs., 768 So.2d 1060, 1065 (Fla.2000); Von Eiff v. Azicri, 720 So.2d 510, 513 (Fla.1998); In re E.H., 609 So.2d 1289, 1290 (Fla.1992); Padgett v. Dep’t of Health & Rehabilitative Servs., 577 So.2d 565, 570 (Fla.1991). Indeed, this Court has noted that Florida’s “constitutional right to privacy is much broader in scope, embraces more privacy interests, and extends more protection to those interests than its federal counterpart.” Von Eiff, 720 So.2d at 514.
By its very nature, a legal proceeding in which the state seeks to terminate the parental rights of one of its citizens is a direct governmental interference with the fundamental right to be involved with the life of one’s child. Thus, the liberty, privacy, and due process interests protected by the United States and Florida constitutions are implicated at every stage during the termination process. Indeed, the state action at issue in the instant case could, and often does, have the ultimate effect of completely severing the constitutionally protected relationship between a parent and child.
Because the interest at stake in parental rights termination proceedings is a fundamental one, heightened procedural safeguards are necessary to ensure that the *906 essential right is not abridged. The Supreme Court has stated, “The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be ‘condemned to suffer grievous loss.’ ” Santosky v. Kramer, 455 U.S. 745, 758, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (quoting Goldberg v. Kelly, 397 U.S. 254, 262-63, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)). Because parental rights termination proceedings “seek not merely to infringe [upon the] fundamental liberty interest, but to end it ... few forms of state action are both so severe and so irreversible.” Id. at 759, 102 S.Ct. 1388; see also Y.H. v. F.L.H., 784 So.2d 565, 569 (Fla. 1st DCA 2001) (noting that after termination, the parent “stands as a stranger ... and the fact that he is the child’s biological father is now legally irrelevant”) (quoting Stefanos v. Rivera-Berrios, 673 So.2d 12, 14 (Fla.1996)). Therefore, in my view there is no reason not to afford available procedural protections to safeguard against the rendering of mistaken final judgments.
The Supreme Court has noted that “numerous factors combine to magnify the risk of erroneous factfinding” in termination proceedings. Santosky, 455 U.S. at 762, 102 S.Ct. 1388. Additionally, the Supreme Court has stated:
Permanent neglect proceedings employ imprecise substantive standards that leave determinations usually open to the subjective values of the judge. In appraising the nature and quality of a complex series of encounters among the agency, parents, and the child, the court possesses unusual discretion to under-weigh probative facts that might favor the parent.
[[Image here]]
... Given the weight of the private interests at stake, the societal cost of even occasional error is sizable.
Id. at 762-6, 102 S.Ct. 1388 (citations omitted); see also Lassiter v. Dep’t of Social Servs., 452 U.S. 18, 30, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). It is plain that parental rights termination proceedings require an extremely subjective evaluation of a very complex relationship between multiple entities and interests. In fact, at the time termination proceedings are commenced, the proceedings involve — at a minimum' — the judiciary, the parent or parents, the child, and a custodial government agency. Each of these participants may have significantly divergent interests, none of which can always be evaluated objectively.
Moreover, I cannot close my eyes to the fact that the circumstances at issue in termination proceedings could be impacted by insidious bias. The United States Supreme Court has noted: Because parents subject to termination proceedings are often poor, uneducated, or members of minority groups, such proceedings are often vulnerable to judgments based on cultural or class bias. See Santosky, 455 U.S. at 763, 102 S.Ct. 1388. Thus, imposition of the Anders-type procedural safeguards would serve to prevent possible discrimination, purposeful or otherwise.
Under the decisions of the United States Supreme Court, as well as those of this Court, it is undeniable that an essential fundamental liberty interest is at stake in parental rights termination proceedings. In my view, principles of constitutional consistency require that this Court protect the fundamental interest in raising one’s children in a fashion coordinate with the procedural safeguards applicable when a citizen’s physical liberty is at stake. Because indigent defendants subject to imprisonment and civil commitment benefit from Anders-style review on appeal, so too should parents who cannot afford to hire an appellate attorney to pursue an appeal *907 of the termination of their relationship with their child have Anders-type protections. If the interests of these groups of persons are such as to require appointed counsel at the trial level, the same processes should be applicable at the appellate level to provide Anders-type protection even if we do not impose identical Anders proceedings.
To effect the adequate protection of certain indigent litigants’ rights, the federal and Florida courts have long held that those who cannot afford a trial attorney must receive the services of one through court appointment. Currently, when the state endeavors to incarcerate an indigent because of an alleged violation of the criminal laws, seeks to have an indigent civilly committed under the provisions of Florida’s Baker Act, or requests that a court terminate the parental rights of an indigent person, that litigant is entitled to the services of court-appointed counsel. At present, however, the protections of An-ders-style review at the appellate level only attach in the criminal and civil commitment scenarios. I would act today to rectify this inconsistency, and grant An-ders-type procedural protections to indigent parents pursuing an appeal of an adverse result at trial as those appealing criminal convictions and civil commitment orders. Because the law demands no less, I conclude that the result reached by the majority is both illogical and inconsistent.
While the appellee raises the specter of children endlessly awaiting ultimate disposition as to their custody, Florida statutory law and procedural rules safeguard against any excessive delay caused by Anders-type protections in the district courts. Section 39.815(1) of the Florida Statutes mandates that district courts of appeal give “an appeal from an order terminating parental rights priority in docketing” and requires a decision to be rendered “on the appeal as expeditiously as possible.” § 39.815(1), Fla. Stat. (2001). See also Fla. R.App. P. 9.146(g) (“The court shall give priority to appeals [in juvenile dependency and termination of parental rights cases] under this rule.”). Additionally, the district courts themselves have strong policies which ensure the rapid resolution of parental rights termination proceedings.[8] Thus, the extant statutory framework ensures that application of Anders-type protections to parental rights termination appeals would not prolong these actions any longer than is necessary to protect the fundamental liberties of all the parties involved. While I understand that the majority may not wish to impose full Anders proceedings in this context, a result with which I have no fundamental opposition, we should at least institute Anders-type protections formulated and crafted for this type of proceeding to ensure fundamental justice.
Finally, I am guided by the principle that
the Constitution recognizes higher values than speed and efficiency. Indeed, one might fairly say of the Bill of Rights in general, and the Due Process Clause in particular, that they were designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy....
Stanley v. Illinois, 405 U.S. 645, 656, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (footnote omitted). At some point, we must thoroughly recognize that there are higher values in a system which professes to do justice and care for its children than mere *908 speed of operation and speed for the purpose of expediency. Indeed, the federal and Florida constitutions mandate that the courts protect the fundamental interests of the people regardless of the possibility of slight delays in final adjudication. If it is the Anders process itself that should be reconsidered, then so be it, and I would agree. However, the inconsistency of application causes me to respectfully concur in result only because we fail to afford any Anders-type protections whatsoever which, in my view, could be easily crafted and formulated for fundamental fairness yet not require a full Anders proceeding as it presently exists.

. See, e.g., In re C.G., 609 So.2d 631, 632 (Fla. 2d DCA 1992) ("Even before the legislature mandated expedited appeals in parental [rights] termination cases ... it was the policy of this court to expedite such appeals.”); see also C.S. v. S.H., 671 So.2d 260 (Fla. 4th DCA 1996).