CASANUEVA, J.,
dissenting.
Because I believe the trial court violated the Mother’s substantive due process *524 rights[4] in terminating her parental rights in these unique circumstances, I respectfully dissent. Her counsel’s characterization of these proceedings — that the Mother has lost her daughter because she is not a model parent and not sufficiently rich or socially adapted to stand up to a governmental juggernaut of parenting expectation or navigate a maze of agency bureaucracy and court proceedings — accurately represents what has happened in this case. I am forced by these circumstances to admit that this case has shocked my judicial conscience. See City of Lauderhill v. Rhames, 864 So.2d 432, 438 (Fla. 4th DCA 2003) (“A fundamental right that falls within the ambit of substantive due process may not be taken away by a state’s executive or non-legislative acts for reasons that are ‘arbitrary, irrational, or tainted by improper motive,’ or by means of government conduct so egregious that it ‘shocks the eonscience[.]’ ” (Citations omitted.)).
The Mother’s involvement with the Department and later with the court system began when she left her five-month-old child alone in a playpen for a short period of time while she searched for the child’s three-year-old sibling who had wandered away from his grandfather. This conduct, which I suspect occurs with a great degree of frequency in this state, might well constitute neglect if it is chronic. But in this instance it served merely as a springboard for the State to bring its full panoply of powers and sanctions on the head of this parent, a parent who was otherwise maintaining a proper home for her children, as evidenced by the fact that after the Department’s first contact with the family, the child and her sibling were not sheltered but left in the care of their parents.
It was only after the parents declined to avail themselves of voluntary services that the Department filed the petition seeking dependency. At first, the parents complied with the Department’s requirements, but soon after and in the face of an impending hurricane in August 2004, the Mother and her family left Florida and allegedly did not inform the Department of their departure. According to the Mother, she had told her caseworker of their planned departure and assured the caseworker that she would contact her with their new information as soon as they were settled in South Carolina. The family also believed that they had better employment and family support prospects in South Carolina. The contact was apparently established because, in early 2005, the Department began proceedings to monitor the family under the auspices of its South Carolina counterpart. Soon after, however, and without explanation in this record, a pickup order was executed by the local sheriff in South Carolina on behalf of the Department. The children were taken from their parents, returned to Florida, and placed in separate foster care homes to await disposition.
*525 In November 2005 and for justifiable reasons relating to her father’s declining health, the Mother and her family relocated permanently to New Hampshire. By March 2006, the Department had filed the petition to terminate parental rights. The subsequent events ultimately resulting in the termination of parental rights are set forth by the majority.
I do not believe that our legislature envisioned that section 39.801(3)(d), Florida Statutes (2005), the statute that deems failure to appear as consent to termination of parental rights, would be used in these circumstances. As our supreme court has warned, individuals are to be treated in a fundamentally fair manner and their individual rights should be free from unwarranted encroachment by the government, J.B. v. Fla. Dep’t of Children & Family Servs., 768 So.2d 1060, 1063 (Fla.2000) (citing Dep’t of Law Enforcement v. Real Property, 588 So.2d 957 960 (Fla.1991)). I do not condone or approve of the Mother’s behavior in relation to the Department or to the court but, in my opinion, her poor behavior does not rise to a level warranting the loss of her child. In all, the Mother failed, once, to have her child properly supervised (although a five-month-old infant in a playpen will not wander off), failed to cooperate fully with the Department while she was residing out of state and facing difficult economic and familial circumstances, and failed to attend an important court hearing. I recognize that the majority’s strict reading of the statute supports the outcome it condones here, but I cannot conclude that this conduct, individually and collectively, rises to a level where a parent’s rights to her child ought to be terminated. There are other, less severe sanctions that could be imposed, including civil contempt. I doubt that the Legislature reasonably envisioned that this statute would be used to allow the first small snowball of the Mother’s act of leaving her five-month-old child for a few minutes unattended in a playpen to develop into the avalanche of fateful and tragic consequences it did here.
Our law recognizes that a parent has a constitutionally recognized fundamental liberty interest in her child. Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (reiterating the fundamental liberty interest that parents have “in the care, custody, and control of their children”); Heart of Adoptions, Inc. v. J.A., 963 So.2d 189, 206 (Fla.2007) (“The interest of a parent in the upbringing of his or her children has been acknowledged by this Court as a fundamental liberty interest under the Florida right to privacy.”). I believe the use of section 39.801(3)(d) under these factual circumstances to terminate a fundamental liberty interest operated as a constitutional deprivation of due process. As such, the trial court’s action is, in my view, an unconstitutional application of the statute.
I would reverse both final orders on appeal with instructions to allow the Mother to continue with her case plan, as she had shown she was reasonably attempting to do in Florida, South Carolina, and New Hampshire.

. As the Florida Supreme Court has stated:
Substantive due process under the Florida Constitution protects the full panoply of individual rights from unwarranted encroachment by the government. To ascertain whether the encroachment can be justified, courts have considered the propriety of the state’s purpose; the nature of the party being subjected to state action; the substance of that individual's right being infringed upon; the nexus between the means chosen by the state and the goal it intended to achieve; whether less restrictive alternatives were available; and whether individuals are ultimately being treated in a fundamentally unfair manner in derogation of their substantive rights....
J.B. v. Fla. Dep’t of Children & Family Servs., 768 So.2d 1060, 1063 (Fla.2000) (quoting Dep't of Law Enforcement v. Real Property, 588 So.2d 957 (Fla.1991)).