860 So.2d 986 (2003)
R.H., Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Appellee.
No. 3D02-2399.
District Court of Appeal of Florida, Third District.
October 15, 2003.
Rehearing Denied December 3, 2003.
*987 Douthit and Murray and Marc Anthony Douthit, Miami, for appellant.
Calianne P. Lantz, Assistant District Legal Counsel, for appellee.
Before LEVY, GERSTEN, and GREEN, JJ.
GREEN, J.
The father, R.H., appeals an order denying his motion to vacate default, which led to the termination of his parental rights. Without expressing an opinion as to the merits of the petition to terminate, we reverse the final judgment terminating the father's parental rights and remand for further proceedings.
In February 2002, an amended petition for termination of parental rights was filed. Both parents appeared at an advisory hearing on March 17, 2002, and a trial was set for 9:00 a.m., June 27, 2002. Not only was the father advised of the trial date at the hearing, but counsel for the father also sent a letter informing him of the time and date of the trial. The trial date was subsequently changed, however, to May 29, 2002. The court sent written notice of this change to the father's counsel.
Upon receipt of the new trial date, counsel sent the father a second letter, which mimicked the first letter, save the trial date. The father claims that he thought this second letter was simply a duplicate of the initial letter denoting the June 27th trial date. The father did not appear at the May 29th trial and the court entered a default against him. Without the presentation of any evidence in support of the petition for termination by DCF, a final judgment was entered, terminating the father's parental rights.
The father filed a timely motion to vacate default. Attached to the motion as exhibits were copies of the two letters sent to the father by his attorney and certificates of completion from an outpatient substance abuse program and from Advocate Program, Inc. The father claimed that he did not appear at the May 29, 2002, hearing due to excusable neglect in that he did not recognize that his lawyer's second letter had a new court date. In addition, the father argued that he had a meritorious defense to the underlying petition for termination of parental rights because he had successfully completed the programs "suggested" in his case plan. The trial court held a hearing on the father's motion, and denied it outright, writing that:
Upon reviewing the Motion together with [the] exhibits the court finds that there was no excusable neglect for the *988 father's failure to appear for trial and that it would not be in the best interest of the minor children to delay their placement.
To begin with, Florida public policy favors an adjudication on the merits over the entry of default, and thus a properly filed motion to vacate should be liberally granted. Apolaro v. Falcon, 566 So.2d 815, 816 (Fla. 3d DCA 1990); see also Cunningham v. White, 390 So.2d 467, 468 (Fla. 3d DCA 1980) ("The courts of this state have generally been quite liberal in setting aside default judgments, and any reasonable doubt should be resolved in favor of granting the motion in order to permit a trial on the merits."). See Fla. R. Civ. P. 1.540(b)(1).[1]
In this case, the trial court found that the father's failure to attend the termination proceedings due to his uncontroverted confusion over the trial dates was not the result of excusable neglect. This finding was an abuse of discretion. See, e.g., Wilson v. Woodward, 602 So.2d 547, 549 (Fla. 2d DCA 1992) (holding that motion for relief from judgment should be granted where failure to attend hearing was result of mistake and not because of a "wilful and flagrant act."); Am. Agronomics Corp. v. Varner, 413 So.2d 484, 485 (Fla. 2d DCA 1982) (holding that trial court abused discretion in failing to set aside default judgment where corporate director was served with summons and complaint, but failed to deliver them to counsel because he was under mistaken belief that they were duplicate papers served in unrelated lawsuit). See also Zwickel v. KLC, Inc., 464 So.2d 1280, 1280 (Fla. 3d DCA 1985) ("A failure to timely respond in an action should be considered excusable where it is due to confusion which reasonably exists....").
Not only did the trial court here find that the father's actions did not amount to a showing of excusable neglect, the court found that vacating the default would not be in the best interest of the children. The second tier of the test to vacate a judgment, however, is whether the party has a meritorious defense, not the best interest of the child.[2] The trial court's use of this fallacious standard was a misapplication of the law and also mandates reversal. See Hamilton v. Bogorad, Klein, Schulwolf, Masciovecchio, Inc., 275 So.2d 41, 43 (Fla. 3d DCA 1973) (holding that a timely motion to vacate showing excusable neglect and asserting a meritorious defense should be granted).
Finally, and most importantly, the trial court erred when it terminated the father's parental rights without the taking of any evidence in support of such termination.
The significance of the rights at issue here cannot be overstated. In Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), the United States Supreme Court considered termination of parental rights procedures under New York law. At issue in Santosky *989 was whether the "fair preponderance of the evidence" standard prescribed by the New York Family Court Act for the termination of parental rights violated the parents' due process rights. 455 U.S. at 747, 102 S.Ct. 1388. The Santosky Court made it clear that state intervention to terminate parental rights must be accomplished by procedures meeting the requisites of due process. As the Santosky Court explained, it is
"plain beyond the need for multiple citation" that a natural parent's "desire for and right to `the companionship, care, custody, and management of his or her children'" is an interest far more precious than any property right.... "A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore, a commanding one."
455 U.S. at 758, 102 S.Ct. 1388 (quoting Lassiter v. Department of Social Services, 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981)). Moreover, the Supreme Court stated that the fundamental liberty interest a parent has in the custody and care of his or her child "does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." Id. at 753, 102 S.Ct. 1388.
While there is no laundry list of specific procedures that must be followed to protect due process guarantees, an analysis of the United States Supreme Court's prior decisions identifies certain procedures that are typically required before an individual can be deprived of a property or liberty interest. In all situations, the Court has required fair procedures and an unbiased decisionmaker. Additionally, the Court has also required notice of the government's action and an opportunity to respond before termination of the interest. See id.; see also Goldberg v. Kelly, 397 U.S. 254, 264, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (holding that due process requires an evidentiary hearing prior to the termination of welfare assistance because termination "may deprive an eligible recipient of the very means by which to live").
J.B. v. Fla. Dep't of Children & Family Servs., 768 So.2d 1060, 1064 (Fla.2000).
DCF, however, relying on M.A. v. Florida Department of Children & Family Services, 760 So.2d 249 (Fla. 3d DCA 2000), and M.E. v. Florida Department of Children & Family Services, 728 So.2d 367 (Fla. 3d DCA 1999), claims that the default and subsequent final judgment were proper. DCF argues that the father's "failure" to maintain reasonable contact with his counsel[3] was sufficient grounds to enter a default against the father in his absence, and the default was ground for effectively terminating his parental rights. We find both M.A. and M.E. to be distinguishable from the case at bar.
In M.A., the mother was ordered by pretrial order to attend a final termination of parental rights hearing. A calendar call was held, which the mother attended, and the parties were instructed to be prepared to come to trial on two hours' notice the week of August 17th. M.A., 760 So.2d at 249. On August 18th, the trial court contacted counsel to inform them that the trial would start the following morning. Id. Counsel could not reach the mother. On the day of trial, the mother's counsel orally moved for a continuance, which was denied. Id. Thereafter, a trial proceeded with counsel acting on the mother's behalf. A judgment terminating the mother's parental rights was entered six weeks later. On appeal the mother claimed that the trial court had abused its discretion in *990 denying her counsel's motion for continuance. This court disagreed, finding that the mother knew she needed to be available for trial during the week of August 17th on two hours notice, and that it was her duty to keep in touch with counsel.[4]Id. at 249-50, citing M.E., supra.
Similarly, in M.E., a trial was held in a mother's absence resulting in the termination of her parental rights. Specifically, this court found that:
[t]he more substantial question is whether the trial court should have granted the mother's motion for rehearing on this ground. We find no abuse of discretion under the facts present here. The trial court postponed ruling on the motion for rehearing so that the mother could file an affidavit stating the reasons for her nonattendance at trial and the substance of what her testimony would be, if the record were reopened. Since the mother never filed the affidavit, the trial court quite properly denied the motion for rehearing.
M.E., 728 So.2d at 369.
In both of these cases, a trial on the merits was held where counsel could respond to and challenge DCF's charges on behalf of the parents. In this case, however, we have a default entered without the benefit of the presentation of any evidence. The trial court's final judgment relied solely on the court's past dealings with the father and the papers filed with the termination petition. We believe that, at a bare minimum, the father must be given a fair opportunity to be heard and respond to DCF's charges before the rights to his children are adjudicated by the court. See, e.g., J.T. v. Dep't of Children & Families, 800 So.2d 692, 693 (Fla. 5th DCA 2001) (affirming termination of parental rights where parents did not appear at termination hearing and court heard testimony and found evidence of parents' non-compliance with DCF's case plan and parents' failure to remedy conditions which led to children's removal from parents' home).
Reversed and remanded for proceedings consistent with this opinion.
LEVY, J., concurs.
GERSTEN, Judge (concurring).
I concur in the majority's decision to reverse the final judgment for termination of parental rights and finding of a default by consent. I write separately to clarify that defaults by consent can be properly entered against parents pursuant to Section 39.801(3)(d), Florida Statutes (2002). See J.B. v. Fla. Dep't of Children & Family Servs., 768 So.2d 1060 (Fla.2000) (upholding constitutionality of consent to default provision of Section 39.801(3)(d) which permits termination of parental rights based upon a parent's neglect of the proceeding); J.T. and N.T. v. Dep't of Children and Families, 800 So.2d 692 (Fla. 5th DCA 2001)(parental rights terminated even though parents failed to appear at termination hearing).
There is no requirement that a parent be present at trial in order to terminate his or her parental rights. See *991 § 39.801(3)(d), Fla. Stat. (2002)(authorizing termination of parental rights by default; failure to personally appear at adjudicatory hearing "shall constitute consent for termination of parental rights"); J.B. v. Fla. Dep't of Children & Family Servs., 768 So.2d at 1060; J.T. and N.T. v. Dep't of Children and Families, 800 So.2d at 692.
Section 39.801(3)(d) provides that a consent for termination of parental rights shall be entered where: (1) a parent appears at the advisory hearing, (2) the parent is ordered to appear at the subsequent adjudicatory hearing, (3) the parent is provided with the date, time and location of the hearing, and (4) the parent fails to appear at the adjudicatory hearing. In the present case, both parents appeared at the advisory hearing, were ordered to appear at the adjudicatory hearing, and were given the date, time and location of the hearing.
I disagree with the majority's conclusion that the trial court misapplied the law when it mentioned a concern regarding the best interests of the minor children in its 10-page order. Pragmatically, in cases involving termination of parental rights, the best interests of children is always an appropriate underlying concern. Such concern does not translate into a finding of abuse of discretion. There is no evidence in the record that the trial court applied the wrong standard in assessing the merits of the father's "Motion to Vacate Default."
However, since Florida public policy favors adjudication on the merits, I agree with the majority on this sole basis. See North Shore Hosp., Inc. v. Barber, 143 So.2d 849 (Fla.1962); Apolaro v. Falcon, 566 So.2d 815 (Fla. 3d DCA 1990). Accordingly, I concur in the result only.
NOTES
[1] This rule provides in pertinent part:

(b) On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, decree, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect....
Fla. R. Civ. P. 1.540(b)(1)(1992).
[2] Even if the best interest of the child was the test, it could not have been satisfied in this case where the default was entered without the presentation of any evidence in support of the petition by DCF. See F.C. v. State, Dept. of Children & Families, 780 So.2d 159, 162 (Fla. 2d DCA 2001) ("A finding that the termination is in the child's manifest best interest is not sufficient to support a judgment terminating a parent's rights.").
[3] The father failed to return four telephone calls from his attorney.
[4] In addition, we specifically noted that:

six weeks elapsed between the conclusion of the final hearing and the entry of the final judgment. Certainly if the mother wished to have the record reopened so she could testify, or desired other relief, there was ample time for her to file an appropriate motion.... She did not do so.
M.A., 760 So.2d at 250. In this case, the father filed his motion to vacate default less than a week after the default had been entered against him and nearly three weeks before the original court date.