927 So.2d 204 (2006)
DEPARTMENT OF CHILDREN AND FAMILIES, Appellant,
v.
A.S. and W.S., Parents of R.S., a Child, Appellees.
No. 5D05-2906.
District Court of Appeal of Florida, Fifth District.
April 28, 2006.
*205 Ralph J. McMurphy, of the Department of Children and Families, Wildwood, for Appellant.
Diana K. Simpson, Ocala, for Appellee W.S.
Carol Ann Volini, Ocala, for Appellee A.S.
Patricia M. Propheter, Florida Guardian Ad Litem Program, Orlando.
SAWAYA, J.
In termination of parental rights proceedings, the Department of Children and Families (hereinafter "the Department") may petition for termination on the ground that "the parental rights of the parent to a sibling have been terminated involuntarily." § 39.806(1)(i), Fla. Stat. (2005) (emphasis added). The question here is whether parental rights are "involuntarily" terminated within the meaning of section 39.806(1)(i) when the parents fail to appear for the adjudicatory hearing and the trial court enters the termination order pursuant to section 39.801(3)(d), Florida Statutes (2005), which provides in pertinent part that "failure of [the] parent to personally appear at the adjudicatory hearing shall constitute consent for termination of parental rights." (Emphasis added). We hold that the presumed, implied, or constructive consent that is imposed under section 39.801(3)(d) when a parent fails to personally appear at the adjudicatory hearing does not transform that involuntary proceeding into a voluntary proceeding. Thus, in a subsequent termination proceeding the Department may properly allege section 39.806(1)(i) as grounds for termination.
The facts present a sad story that we see far too often in termination casesa mother and father unable to properly care for their children because the drugs to which they are addicted severely impair their judgment and ability to exercise basic parenting skills. A.S., the mother, gave birth to three children prior to the birth of R.S., the child that is the subject of the instant termination proceeding. Because *206 A.S.'s first child, B.W., was born when A.S. was only fourteen years old, A.S.'s mother undertook the responsibility of rearing B.W. and eventually moved out of state with this child. Several years later, A.S. married and had her second child, S.H. Although no details were given as to the demise of this family, it appears A.S. and the father of S.H. divorced, and the father was given custody of S.H.
At some point in time, A.S. became heavily involved in the use of cocaine. She also met W.S. and, from this union, A.P. was born. Unfortunately, A.P. tested positive for cocaine at birth and shortly thereafter was sheltered. Dependency proceedings were initiated and A.S. and W.S., who subsequently married, failed to comply with their case plan and their parental rights to A.P. were terminated after they failed to appear at the adjudicatory hearing. The final judgment emanating from the trial court provided that A.S. and W.S. consented to the termination pursuant to section 39.801(3)(d) and set forth detailed factual findings regarding the neglect of A.P. by both A.S. and W.S., as well as their failure to comply with the case plan.[1]
Several years later, R.S. was born to A.S. and W.S. As a result of both parents' history of drug abuse, criminal charges, unstable housing, and prior involvement with the Department, the Department immediately removed the child from the parents' care and filed a petition for dependency and termination of parental rights based upon section 39.806(1)(i).[2]
The trial court adjudicated R.S. dependent, but dismissed the petition to terminate the parents' rights, finding the previous order terminating their rights to A.P. was based on consent and thus could not form a basis for termination under section 39.806(1)(i). Discontent with this ruling, the Department appeals, arguing that the trial court erred as a matter of law in holding that the implied, constructive, or presumed consent imposed pursuant to section 39.801(3)(d) in A.P.'s case necessarily transformed that involuntary termination proceeding into a voluntary proceeding, thereby requiring dismissal of the Department's petition in the case concerning R.S.
"An order dismissing a petition for termination of parental rights is a mixed question of law and fact which will be sustained on review if the court applied the correct law, and its ruling is supported by competent substantial evidence in the record." Dep't of Children & Families v. K.P., 858 So.2d 1137, 1137 (Fla. 5th DCA 2003) (citing In re M.F., 770 So.2d 1189 (Fla.2000)). Here, competent substantial evidence supports the finding that A.S. and W.S. both failed to appear at the adjudicatory hearing regarding the termination of their parental rights as to A.P., and neither parent contends otherwise. Hence we must resolve a legal issue that requires us to analyze the interplay between sections 39.801(3)(d) and 39.806(1)(i) to determine whether consent under the former statute renders the proceedings voluntary, thereby precluding termination under the latter.
A.S. and W.S. advert to definitions of the terms "consent," "voluntary," and "involuntary" and rely heavily on perceived similarities between the first two and the opposite meaning of the latter. Reducing *207 their arguments to their essence, "consent" means voluntary and is, therefore, the antithesis of "involuntary." Carrying this argument to its logical conclusion, they contend that consent under section 39.801(3)(d) transforms an otherwise involuntary proceeding into a voluntary proceeding. But we do not believe that a thorough analysis of the issue before us begins and ends with consideration of definitions of these terms extracted from randomly chosen dictionaries, although we certainly recognize that such definitions can be helpful in many instances. See Rollins v. Pizzarelli, 761 So.2d 294 (Fla. 2000). Rather, we must search for the intended meaning of the pertinent statutory provisions and, in order to accomplish this task, we must consider the statutory provisions in pari materia and construe them in harmony with one another. Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452 (Fla.1992); G.E.L. Corp. v. Dep't of Envtl. Prot., 875 So.2d 1257 (Fla. 5th DCA 2004).
Our analysis begins with the provisions of section 39.806(1), Florida Statutes (2005), which establish the grounds for termination of parental rights. Specifically, it provides that "[t]he department, the guardian ad litem, or any person who has knowledge of the facts alleged or who is informed of those facts and believes that they are true may petition for the termination of parental rights under any of the following circumstances. . . ." § 39.806(1), Fla. Stat. (2005) (emphasis added). Nine grounds are specifically listed and because any one of them may be sufficient for termination, each is separate and distinct. See § 39.806(1)(a)-(i), Fla. Stat. (2005). Of these nine separate and distinct grounds, voluntary terminations are specifically provided for under section 39.806(1)(a); the remaining eight grounds, including terminations under section 39.806(1)(i), are involuntary. Hence, the Legislature certainly knows the difference between voluntary and involuntary termination and has provided specific provisions for each.
Conspicuously absent from the provisions of section 39.806(1) as a ground for voluntary termination is consent under section 39.801(3)(d), and for good reason: the Legislature never intended for consent under section 39.801(3)(d) to be a ground for termination. Rather, section 39.801(3)(d) and its implementing rule, found in Florida Rule of Juvenile Procedure 8.525, are "intended to ensure that the object of the termination petition is not defeated by the neglect of the proceeding by the parent." E.A. v. Dep't of Children & Families, 894 So.2d 1049, 1051 (Fla. 5th DCA 2005). We believe that if the Legislature intended for consent under 39.801(3)(d) to transform an involuntary proceeding into a voluntary proceeding, it surely would have said so. It did not.
Further analysis reveals that voluntary termination under section 39.806(1)(a) requires consent by the parents that is altogether different from consent under section 39.801(3)(d). Specifically, consent under section 39.801(3)(d) is implied, presumed, or constructive consent that derives from the parent's failure to appear. See In re A.N.D., 883 So.2d 910, 913 n. 2 (Fla. 2d DCA 2004) ("[T]he statutes and rules refer to a parent's `consent.' Because this consent occurs through implication, it may be referred to as `presumed consent,' `implied consent,' or `constructive consent.'"); S.C. v. Dep't of Children & Families, 877 So.2d 831, 832 (Fla. 4th DCA 2004) ("Further, section 39.801(3)(d), Florida Statutes, and Florida Rule of Juvenile Procedure 8.510(a)(3), provide statutory and procedural authority for the court to accept a parent's failure to appear at an advisory hearing as constructive consent to termination of parental rights by default."). *208 A voluntary termination proceeding, on the other hand, leaves nothing to presume, imply, or establish constructively because the voluntary surrender must be clear, expressed, unequivocal, and emanate directly from the parent. See T.C.B. v. Florida Dep't of Children & Families, 816 So.2d 194, 196-97 (Fla. 1st DCA 2002) ("We interpret the legislative intent behind section 39.806(1)(a), Florida Statutes, to permit a parent to seek termination of his or her parental rights by voluntarily and unequivocally surrendering his or her children to the State.").
For example, in C.B. v. B.C., 851 So.2d 847, 848 (Fla. 5th DCA 2003), we recognized that Florida Rules of Juvenile Procedure 8.500(g) and 8.520(c) "are two rules of juvenile procedure that speak to a parent's voluntary relinquishment of parental rights in the course of a termination proceeding." The requirements of these rules are fulfilled by the inquiry made of the parents by the trial court as to the specific rights they relinquish, which is usually made a part of the record or reduced to writing. When a parent fails to attend an adjudicatory hearing and the trial court enters a judgment based on consent, there are no similar requirements; consent is simply implied or presumed to prevent the parents from improperly manipulating, prolonging, or neglecting the proceedings.
Moreover, consent under section 39.801(3)(d) does not end the judicial labor of the trial court; it must then proceed to receive evidence to support the grounds alleged in the petition for termination. See R.H. v. Dep't of Children & Family Servs., 860 So.2d 986 (Fla. 3rd DCA 2003); J.T. v. Dep't of Children & Families, 800 So.2d 692, 693 (Fla. 5th DCA 2001). In J.T., for example, this court refused to set aside a final judgment based on parental implied consent under section 39.801(3)(d) because evidence was admitted at the adjudicatory hearing to support the grounds for termination alleged by the Department. We explained:
The parents' reliance on In re E.L., 732 So.2d 37 (Fla. 2d DCA 1999) is misplaced. In E.L., the mother's counsel did not concede that his client had been notified of the hearing. Equally important, in E.L., the court terminated parental rights based solely upon the mother's default in failing to appear at the hearing. See § 39.801(3)(d), Fla. Stat. Here, the court took testimony and found that termination was proper, irrespective of the parents' non-appearance, given the evidence of their failure to substantially comply with the case plans and their failure to remedy the conditions which led to the children's removal from their care. The termination was not predicated simply upon the parents' default.
Id. at 693. In R.H., the court cited J.T. and reached the opposite result based on the same reasoning. The trial court did not hold an evidentiary hearing, but simply entered final judgment terminating parental rights on the implied consent of the parents under section 39.801(3)(d) and the documents filed by the Department. In setting aside the final judgment, the court explained, "Finally, and most importantly, the trial court erred when it terminated the father's parental rights without the taking of any evidence in support of such termination." 860 So.2d at 988. We believe that consent under section 39.801(3)(d) allows the involuntary proceedings to proceed without the presence of the parents and does not alleviate the need for evidence to support the grounds alleged in the petition.
Based on the preceding analysis, we conclude that the Legislature never intended that presumed, implied, or constructive consent under section 39.801(3)(d) transforms *209 an involuntary proceeding into one that is voluntary. We believe that our construction gives full effect to all of the pertinent statutory provisions and construes them in harmony with one another. Accordingly, we reverse that part of the trial court's order dismissing the defendant's petition alleging grounds for termination under section 39.806(1)(i), and we remand the case to the trial court for further proceedings.
We acknowledge that our opinion conflicts with the decisions of the Second District Court in In re A.D.C., 854 So.2d 720 (Fla. 2d DCA 2003), and In re T.S., 855 So.2d 679 (Fla. 2d DCA 2003), disagreed with on other grounds by Florida Dep't of Children & Families v. F.L., 880 So.2d 602 (Fla.2004) (addressing the constitutionality of section 39.806(1)(i)). Accordingly, we certify direct conflict with those decisions.
AFFIRMED in part; REVERSED in part; REMANDED.
PLEUS, C.J., and ORFINGER, J., concur.
NOTES
[1] The order also terminated A.S.'s parental rights to her first child, B.W.
[2] The Department also alleged as an alternative ground that termination was proper based on section 39.806(1)(c). The trial court held that the Department had failed to meet its burden to justify termination under this statute. We affirm that ruling without further discussion.