14 So.3d 228 (2009)
FLORIDA DEPARTMENT OF CHILDREN AND FAMILY SERVICES, et al., Petitioners,
v.
P.E., Respondent.
No. SC09-169.
Supreme Court of Florida.
July 16, 2009.
*229 Bill McCollum, Attorney General, Tallahassee, FL, Kelley Schaeffer, Assistant Attorney General, Tampa, FL and Jeffrey Dana Gillen, Statewide Appeals Director, Department of Children and Families' Children's Legal Services, West Palm Beach, FL; and M. Linville Atkins, General Counsel, Mercedes E. Scopetta, Regional Counsel, and Annette Lizardo, Appellate Counsel, Statewide Guardian Ad Litem, Orlando, FL, for Petitioners.
Lorena L. Kiely, Plant City, FL, for Respondent.
CANADY, J.
We have for review the decision in In re H.E., 3 So.3d 341 (Fla. 2d DCA 2009), review granted sub nom. Florida Department of Children & Family Services v. P.E., 4 So.3d 676 (Fla.2009), in which the Second District Court of Appeal addressed a question of statutory construction regarding a parent's implied consent to termination of parental rights under section 39.801(3)(d), Florida Statutes (2007). The statute provides for entry of such consent upon a parent's "failure to personally appear at the adjudicatory hearing." § 39.801(3)(d). The Second District held that when the trial court enters a parent's consent to termination under the statute, the Department of Children and Family Services (Department) is not required to present evidence to support any of the *230 statutory grounds for termination alleged in the petition.
On that point, the Second District certified conflict with the Third District Court of Appeal's opinions in S.S. v. State Department of Children & Family Services, 976 So.2d 41 (Fla. 3d DCA 2008), and R.H. v. Department of Children & Family Services, 860 So.2d 986 (Fla. 3d DCA 2003), and the Fifth District Court of Appeal's opinion in Department of Children & Families v. A.S., 927 So.2d 204 (Fla. 5th DCA 2006). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. As explained below, we agree with the Second District's resolution of the conflict issue, but we disapprove of a portion of its reasoning. Accordingly, we quash its decision in part and disapprove of the Third and Fifth Districts' holdings on the conflict issue.

I. BACKGROUND
In early August 2005, the six-month-old child H.E. was removed from P.E., the mother, and placed in shelter care by the Department. The child was later adjudicated dependent, and in July 2007 the Department filed a petition for termination of parental rights, alleging the following statutory grounds: abandonment; continued involvement of the parent threatens the child irrespective of services; continued abuse; abandonment or neglect after filing a case plan; and material breach of the case plan. See § 39.806(1), Fla. Stat. (2007).[1]
The mother appeared at the advisory hearing held on July 5, 2007. The trial court expressly informed her of the date, time, and location of the adjudicatory hearing and told her that her presence was necessary and that she could lose her parental rights if she failed to appear at the adjudicatory hearing. The court also appointed counsel for the mother and instructed P.E. to call her attorney that day. Before she left the hearing, the mother signed a "Notice to Appear" that contained the dates, times, and locations of both the pretrial conference and the adjudicatory hearing and which contained the following warning:
FAILURE TO PERSONALLY APPEAR FOR A SCHEDULED TERMINATION OF PARENTAL RIGHTS ADJUDICATORY HEARING, [sic] CONSTITUTES CONSENT TO THE TERMINATION OF PARENTAL RIGHTS OF YOUR CHILD(REN). IF YOU FAIL TO APPEAR ON THE DATE AND TIME SPECIFIED, YOU MAY LOSE ALL LEGAL RIGHTS AS A PARENT TO THE CHILD OR CHILDREN NAMED IN THE PETITION ATTACHED TO THIS NOTICE.
On July 30, the court issued an order after the pretrial conference with counsel for the parties, which again provided the information regarding the date, time, and location of the adjudicatory hearing. Copies of the order were sent to the parties, including the mother and her counsel.
The trial court convened the adjudicatory hearing on August 20, 2007, and upon report that P.E. was not present, sent the bailiff to sound the halls for her. The mother's counsel was present but offered no information regarding P.E.'s whereabouts. Finally, the trial court found that the mother had been given the required notice and that her failure to appear constituted consent to the allegations in the petition for termination of parental rights *231 under section 39.801(3)(d).[2] Because the guardian ad litem was unexpectedly unavailable to testify, the court set a permanency hearing for September 25.
Eighteen days later, on September 7, the mother through counsel filed a "Motion for Rehearing" seeking to vacate the consent entered by the trial court when she failed to appear at the adjudicatory hearing. Without factual elaboration, the mother alleged that her failure to appear was "not willful" and resulted from a "misunderstanding." At the hearing on the mother's motion held on September 21, the mother testified, admitting that at the advisory hearing she signed the notice to appear. However, she testified that although she could have, she did not read the information about the adjudicatory hearing in the notice. She claimed that she appeared at court on the wrong day based on incorrect information from the child's father and that she then called her attorney only to discover the adjudicatory hearing was previously held. The case manager testified that after the July 5 advisory hearing she told the mother of the importance of attending the adjudicatory hearing and the consequence of nonattendance. She also stated that the mother had the written documents containing the pertinent hearing information.
The trial judge reviewed the transcript from the adjudicatory hearing and found that she had specifically informed the mother of the hearing dates and the consequences for failing to appear and that the mother also received written notice. Further, the trial court found the mother's testimony was not credible. Accordingly, the court denied the mother's motion.
At the subsequent hearing on September 25, the guardian ad litem testified regarding the child's manifest best interests and recommended the termination of parental rights. At the conclusion of the hearing, the trial court entered an order terminating the mother's parental rights, based on the mother's statutory consent to termination resulting from her failure to appear at the adjudicatory hearing. The court also found that termination was in the manifest best interests of the child and was the least restrictive means for protecting the child.
On appeal, the mother raised three issues, but the Second District addressed only onethe mother's contention that despite the trial court's entry of the mother's consent, the Department was required to prove the grounds for termination alleged in the petition. In re H.E., 3 So.3d at 342.[3] As explained below, the district court rejected this contention and certified conflict with two other district courts on the issue. Id. at 343-44.

II. CONFLICT IN THE DISTRICT COURTS
The question presented to the Second Districtand now to this Courtconcerns the interplay of several statutes that govern the termination of parental rights. To clarify the conflict, we first outline the operation of the relevant statutory provisions.
Under section 39.802, Florida Statutes (2007), the operation of the provisions for *232 terminating a parent's parental rights begins with the filing of a petition. The statute provides for the contents of the petition as follows:
(4) A petition for termination of parental rights filed under this chapter must contain facts supporting the following allegations:
(a) That at least one of the grounds listed in s. 39.806 has been met.

(b) That the parents of the child were informed of their right to counsel at all hearings that they attended and that a dispositional order adjudicating the child dependent was entered in any prior dependency proceeding relied upon in offering a parent a case plan as described in s. 39.806.
(c) That the manifest best interests of the child, in accordance with s. 39.810, would be served by the granting of the petition.
§ 39.802(4) (emphasis added). Section 39.806(1), in turn, provides specific statutory grounds for termination. One of the grounds is voluntary surrender through which a parent formally consents to termination:
(a) When the parent or parents have voluntarily executed a written surrender of the child and consented to the entry of an order giving custody of the child to the department for subsequent adoption and the department is willing to accept custody of the child.
1. The surrender document must be executed before two witnesses and a notary public or other person authorized to take acknowledgments.
2. The surrender and consent may be withdrawn after acceptance by the department only after a finding by the court that the surrender and consent were obtained by fraud or under duress.
§ 39.806(1) (emphasis added). The other grounds for termination listed in the statute are involuntary in nature. See § 39.806(1)(b)-(i). In this case, for example, the Department alleged several involuntary grounds under the statute, such as abandonment and that continued parental involvement threatened the child irrespective of services. See id. § 39.806(1)(b)-(c).
After the petition is filed, the case is set for an advisory hearing. See § 39.802(3). Section 39.801 establishes requirements for service and notice and specifically addresses the problem presented in this case of a parent who fails to appear at the adjudicatory hearing. Section 39.801(a) requires that parents be given notice of the advisory hearing and served with a copy of the petition and specifies the language of the notice as follows:
The document containing the notice to respond or appear must contain, in type at least as large as the type in the balance of the document, the following or substantially similar language: "FAILURE TO PERSONALLY APPEAR AT THIS ADVISORY HEARING CONSTITUTES CONSENT TO THE TERMINATION OF PARENTAL RIGHTS OF THIS CHILD (OR CHILDREN). IF YOU FAIL TO APPEAR ON THE DATE AND TIME SPECIFIED, YOU MAY LOSE ALL LEGAL RIGHTS AS A PARENT TO THE CHILD OR CHILDREN NAMED IN THE PETITION ATTACHED TO THIS NOTICE."
The consequence for failing to appear at the advisory hearing or the adjudicatory hearing is clearly stated in the statute as follows:
(d) If the person served with notice under this section fails to personally appear at the advisory hearing, the failure to personally appear shall constitute consent for termination of parental *233 rights by the person given notice. If a parent appears for the advisory hearing and the court orders that parent to personally appear at the adjudicatory hearing for the petition for termination of parental rights, stating the date, time, and location of said hearing, then failure of that parent to personally appear at the adjudicatory hearing shall constitute consent for termination of parental rights.

§ 39.801(d) (emphasis added).
In H.E., the Second District examined these statutes to determine whether they require the Department to present evidence of one of the grounds alleged in the petition under section 39.806 after a parent's consent to termination is entered under section 39.801(3)(d) for failure to appear. 3 So.3d at 342-43. The Second District reasoned that the statutorily required implied consent for failure to appear is a voluntary termination essentially equivalent to the voluntary surrender in section 39.806(1)(a) described above, which is one of the statutory grounds for termination. Id. at 343. Accordingly, the Second District concluded that once the consent is entered, the Department is not "required to present evidence of an additional ground for termination." Id.
The Second District certified conflict with opinions from the Third and Fifth District Courts of Appeal "to the extent that those cases require the Department to present evidence as to the grounds for termination once a consent for nonappearance is entered." In re H.E., 3 So.3d at 343-44. As explained below, each of these cases conflicts with the Second District's holding in P.E.
In R.H., the Third District reached the opposite result on similar facts. When the father failed to attend the adjudicatory hearing, the trial court entered the parent's consent under section 39.801(3)(d) and later denied the father's motion to vacate the consent. R.H., 860 So.2d at 987-88. The Third District reversed on several grounds, one of which was the trial court's error in terminating "the father's parental rights without the taking of any evidence in support of such termination." Id. at 988. The district court expressly rejected the contention that the consent alone was sufficient for termination. Id. Then, in S.S., the court relied on R.H. in addressing the mother's second issue on appealthe claim that entry of the implied consent of section 39.801(3)(d) based on her nonappearance at the advisory hearing was insufficient to support the termination of parental rights. S.S., 976 So.2d at 42. The district court stated that even when the statutory implied consent is entered, the Department "nevertheless must prove, by competent substantial evidence, those allegations in the petition." Id.[4]
The Third District's opinion in S.S. also relied on the Fifth District's decision in A.S., the third conflict case. Although the procedural posture of the case differs from the other cases, including H.E., the Fifth District in A.S. addressed the questions of whether the trial court's entry of the implied consent of section 39.801(3)(d) upon a parent's failure to appear constitutes a voluntary or an involuntary termination and whether, despite entry of the consent, the Department must prove the grounds alleged in the petition. A.S., 927 So.2d at 205. The Fifth District concluded that "the Legislature never intended for consent *234 under section 39.801(3)(d) to be a ground for termination," id. at 207, and "that the Legislature never intended that presumed, implied, or constructive consent under section 39.801(3)(d) transforms an involuntary proceeding into one that is voluntary," id. at 208-09. Because the implied consent is neither voluntary nor a ground for termination, the Fifth District reasoned that "consent under section 39.801(3)(d) does not end the judicial labor of the trial court; it must then proceed to receive evidence to support the grounds alleged in the petition for termination." Id. at 208.

III. ANALYSIS
The question presented is whether when a consent to termination of parental rights has been entered under section 39.801(3)(d) upon the parent's failure personally to appear at the adjudicatory hearing, the trial court must nevertheless receive evidence on the grounds for termination alleged in the petition for termination of parental rights. This issue is one of statutory interpretation; accordingly, our review is de novo. Heart of Adoptions, Inc. v. J.A., 963 So.2d 189, 194 (Fla. 2007). Legislative intent guides statutory analysis, and to discern that intent we must look first to the language of the statute and its plain meaning. Knowles v. Beverly Enterprises-Florida, Inc., 898 So.2d 1, 5 (Fla.2004). Where the statute's language is clear or unambiguous, courts need not employ principles of statutory construction to determine and effectuate legislative intent. See Polite v. State, 973 So.2d 1107, 1111 (Fla.2007); Holly v. Auld, 450 So.2d 217, 219 (Fla.1984). Further, "[i]t is axiomatic that all parts of a statute must be read together in order to achieve a consistent whole." Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992).
We have previously acknowledged the balancing of interests evidenced in the statutes governing the termination of parental rights:
[T]he district court correctly recognizes that unwarranted delay is an evil that should be avoided in termination of parental rights proceedings. As a result of the backlog inherent in termination cases, many children are left in legal limbo as their custody status is argued in the courts. Additionally, these proceedings place a tremendous cost and hardship on the State. In response, the Legislature has attempted to resolve this monumental burden by enacting legislation which swiftly moves these cases toward resolution, while at the same time guarding the rights and liberties of the parties involved.
J.B. v. Fla. Dep't of Children & Family Servs., 768 So.2d 1060, 1065-66 (Fla.2000) (citation omitted). In J.B., we addressed the constitutional sufficiency of notice given under the predecessor version of the statute at issue here. That earlier version of the statute, like section 39.801(3)(d), required entry of a consent to termination where the parent failed to appear at the advisory hearing.[5] Although in J.B. we *235 found that the one day's notice of hearing given the father was constitutionally inadequate, we expressly did not hold that "a consent by default can never be entered." Id. at 1066-67. Rather, we upheld the constitutionality of the default provision. Id. at 1068 ("[W]e do not find that the consent by default provision ... is unconstitutional."). Further, we agreed with the district court that the consent by default provision "is necessary to ensure that the object of the petition is not defeated by the parent's neglect of the proceeding. It enables the trial court to bring a termination of parental rights case to conclusion even if the parent has chosen not to participate." Id. at 1067 (quoting J.B. v. Fla. Dep't of Children & Family Servs., 734 So.2d 498 (Fla. 1st DCA 1999)).
As was the case with the predecessor provision at issue in J.B., the Legislature's clear intent in this successor statute is evidenced in the plain language of section 39.801(3)(d), which provides that when a parent has been ordered "to personally appear at the adjudicatory hearing" and has been given the required notice concerning the time and place of the hearing, "then failure of that parent to personally appear at the adjudicatory hearing shall constitute consent for termination of parental rights." (Emphasis added.) The Legislature has unequivocally provided that the parent's failure to personally appear evidences a parent's consent to the termination of his or her parental rights. The trial court's entry of the consent for the parent essentially constitutes entry of a default, i.e., a consent to the allegations in the petition and termination of parental rights. See J.B., 768 So.2d at 1067 (referring to the court entering a "consent by default").
The conflict presented in this case concerns the effect of entering the parent's constructive consent under section 39.801(3)(d) in the further proceedings on the termination of parental rights. The Third and Fifth Districtsunlike the Second Districthave determined that despite entry of the parent's consent by failure to appear, the Department must present evidence on the statutory ground or grounds for termination alleged in the petition. See S.S., 976 So.2d at 42; A.S., 927 So.2d at 208; R.H., 860 So.2d at 988. In sum, these district courts reason that (1) under section 39.802(4)(a), a petition for termination of parental rights must be based on at least one of the grounds for termination provided in section 39.806(1); (2) section 39.801(3)(d)'s implied consent is not listed as a section 39.806 ground; (3) neither section 39.801 nor section 39.806 refers to the other; and, therefore, (4) section 39.801(3)(d) is not a statutory ground for termination and evidence must be presented on the grounds in the petition.
It is undeniable that consent to termination based on the parent's failure to appear is not among the grounds for termination listed in section 39.806(1). We therefore disagree with the Second District's analysis, which equates section 39.801(3)(d)'s constructive consent with the voluntary surrender under section 39.806(1)(a). See In re H.E., 3 So.3d at 343. A voluntary surrender under section 39.806(1)(a) is only accomplished by the parent's execution of "a written surrender of the child," with the "surrender document [being] executed before two witnesses and a notary public or other person authorized to take acknowledgments." A constructive consent for failure to appear *236 pursuant to section 39.801(3)(d) clearly is different in character from a "written surrender" under 39.806(1)(a).
On the core issue, however, we agree with the Second District that the Department was not required to proceed with its burden to present evidence on the alleged grounds for termination; otherwise the consent pursuant to section 39.801(3)(d) "would be rendered meaningless." In re H.E., 3 So.3d at 343.[6] Once the trial court has deemed the parent to have consented to the termination, there is no basis for the parent to complain that the trial court did not consider evidence establishing the existence of a ground for termination under section 39.806(1). The constructive consent provision of section 39.801(3)(d) can only be reasonably understood as providing a basis for termination which precludes a defaulting parent's objection to the absence of proof of a ground for termination under section 39.806(1). No other plausible understanding of the meaning of the constructive consent provision has been advanced. The interpretation adopted by the Third and Fifth Districts effectively drains section 39.801(3)(d) of any meaning. That interpretation therefore must be rejected.
Accordingly, we hold that where an order has been properly entered determining that a parent's failure to appear constitutes consent pursuant to section 39.801(3)(d), the parent may not challenge the basis for the termination of parental rights. Allowing a parent to contest a termination of the parent's rights in such circumstances would be manifestly inconsistent with the statutory provision that the parent's failure "to personally appear at the adjudicatory hearing shall constitute consent for termination of parental rights." § 39.801(3)(d). A parent who has consented cannot thereafter be heard to object. With the finding that the mother constructively consented to termination and with no objection being made to the termination by any other party, no purpose would have been served by requiring the Department to present evidence regarding the statutory grounds for termination.
As with other defaults, a constructive consent to termination entered pursuant to section 39.801(3)(d) may be set aside under the "usual three-part test." E.S. v. Dep't of Children & Family Servs., 878 So.2d 493, 496 (Fla. 3d DCA 2004); see also Fla. R. Civ. P. 1.540(b)(1). Under that test, "the party seeking to vacate the default [must] act with due diligence, demonstrate excusable neglect, and demonstrate the existence of a meritorious defense to the termination petition." E.S., 878 So.2d at 496; see In re A.N.D., 883 So.2d 910, 914 n. 3 (Fla. 2d DCA 2004) ("At a minimum, a `meritorious defense' should include any meritorious arguments regarding the grounds for termination, the manifest best interests of the child, and the least restrictive means for protecting the child."). Motions to vacate such defaults are liberally granted and "courts should ... refrain from determining a termination of parental rights by default when an absent parent makes a reasonable effort to be present at a hearing but is prevented or delayed by circumstances beyond the parent's control." A.N.D, 883 So.2d at 914; see also E.A. v. Dep't of Children & Families, 894 So.2d 1049, 1051 *237 (Fla. 5th DCA 2005) ("The purpose of this rule ... is not to terminate parental rights on a `gotcha' basis.").
In this case, the mother sought to vacate her consent, but the trial court found her testimony was not credible, and the mother did not offer any evidence on the third prong. In this appeal, we have been presented with no argument that the trial court erred in failing to set aside the default. The mother therefore remains bound by the statutory consent.
Finally, we turn to the Department's argument that the Second District erred in reversing the judgment terminating the mother's parental rights. Although the Second District determined that no evidence need be presented on the alleged grounds for termination of parental rights, the court nevertheless reversed because it found that the trial court terminated the mother's parental rights before hearing evidence on the manifest best interests of the child.[7] The record before us showsas the Department has pointed outthat the trial court terminated the mother's parental rights only after hearing the relevant testimony concerning manifest best interests. At the September 25, 2007, hearing, the trial court first heard the guardian ad litem's testimony regarding the child's best interests and then entered the order terminating P.E.'s parental rights that same day. Since there is no basis to justify the reversal of the termination judgment, we quash the district court's decision to reverse and remand for the entry of an order affirming the trial court's decision.

IV. CONCLUSION
As explained above, we hold that when a parent's consent to termination of parental rights is entered under section 39.801(3)(d), such consent necessarily precludes the parent from objecting to the Department's failure to present evidence to establish the grounds for termination alleged in the petition for termination. To the extent the Second District's opinion is consistent with the foregoing analysis, we approve it, but we quash the decision to reverse the trial court. Further, we disapprove the conflict cases to the extent they are inconsistent with our reasoning here.
It is so ordered.
PARIENTE, POLSTON, LABARGA, and PERRY, JJ., concur.
LEWIS, J., concurs in result only with an opinion, in which QUINCE, C.J., concurs.
LEWIS, J., concurring in result only.
I concur in result only because the majority articulates the principle that it simply follows the clear and unambiguous language of the applicable statute, although it in fact proceeds to interpret and construe statutory provisions that are actually unclear and ambiguous, as evidenced by the multiple district courts of appeal that have addressed the identical issue through statutory construction. Contrary to the statutory analysis employed in our decision today, the Third and Fifth District Courts of Appeal have each construed and applied the precise language of the subject statutory provisions and reached a different conclusion to resolve the issue before us. See S.S. v. Dep't of Children & Family Servs., 976 So.2d 41, 42-43 (Fla. 3d DCA 2008); Dep't of Children & Families v. A.S., 927 So.2d 204, 207-09 (Fla. 5th DCA 2006); R.H. v. Dep't of Children & Family Servs., *238 860 So.2d 986, 990-91 (Fla. 3d DCA 2003) (Gersten, J., concurring). In writing for a unanimous court in A.S, Judge Sawaya articulated a rational process based upon the plain language of the statutory provisions that we must address in the present case. Following a thorough, constructive analysis of the relevant statutory provisions, the Fifth District concluded that its construction gave full effect to all of the pertinent provisions and construed them in harmony with one another. See A.S., 927 So.2d at 209. In S.S., the Third District looked to, and agreed with, the analysis of Judge Sawaya to apply the statutory scheme. See 976 So.2d at 43.
Logically, the difference in the results reached by the district courts demonstrates that the statutes we consider today are not clear and unambiguous, but unquestionably require construction and interpretation, which is exactly what the majority has accomplished in this decision. When the plain language of a statute is unclear or ambiguous as to its meaning, the Court must resort to traditional rules of statutory construction to ascertain legislative intent. See Murray v. Mariner Health, 994 So.2d 1051, 1061 (Fla.2008) (citing Starr Tyme, Inc. v. Cohen, 659 So.2d 1064 (Fla.1995)); see also Kasischke v. State, 991 So.2d 803, 807 (Fla.2008) (applying canons of statutory construction where the plain language of a statute was "undeniably susceptible to multiple and irreconcilable interpretations"); Joshua v. City of Gainesville, 768 So.2d 432, 435 (Fla.2000) (stating that the canons of statutory construction control when the language of a statute is unclear). The majority recognizes that the failure of a parent to appear for a hearing, along with the consequences of section 39.801(3)(d), Florida Statutes (2007), are not statutorily listed bases or grounds for the termination of rights in section 39.806. See majority op. at 235-36. It is only through interpretation and construction that the result we reach today may be attained under these ambiguous provisions. Therefore, I concur in result only because although the majority professes that the plain language of the statute supports the decision today, it is far too obvious that statutory construction and interpretation are required to produce this result.
QUINCE, C.J., concurs.
NOTES
[1] The Department sought termination of the father's parental rights in the same petition. However, he appeared and voluntarily surrendered his parental rights at the pretrial conference. He was not a party in the appeal to the district court.
[2] It appears that the trial court issued a written order entering the mother's consent that was sent to the parties, including the mother, but that none of the parties requested that the record here be supplemented with it.
[3] On appeal, P.E. also argued that the trial court erred by entering the consent because she had insufficient notice of the consequence for her failure to appear and that the trial court abused its discretion by denying her motion to vacate the consent. The Second District implicitly rejected these arguments.
[4] The Third District reversed because the mother had not received the statutory notice, the "condition precedent" to entry of the parent's consent for failure to appear. S.S., 976 So.2d at 42. The court addressed the second issue, discussed above, in the event the mother again failed to appear at the new hearing.
[5] The predecessor provision addressed only failure to appear at the advisory hearing: "If the person served with notice under this section fails to respond or appear at the advisory hearing, the failure to respond or appear shall constitute consent for termination of parental rights by the person given notice." § 39.462(1)(d), Fla. Stat. (1995); see In re A.L., 711 So.2d 600, 601 (Fla. 2d DCA 1998) (reversing entry of default in termination proceeding because rules of civil procedure did not apply and there was no statutory authority for default for failure to appear at adjudicatory hearingonly the advisory hearing). The statute was amended in 1999 to require the parent "personally" to appear and add the requirement of entering the statutory consent when a parent failed to appear at the adjudicatory hearing. See ch. 99-193, § 42, Laws of Fla. (amending and renumbering the statute).
[6] We need not and do not consider any of the parties' arguments or the district courts' discussions regarding the impact of a termination predicated on a section 39.801(3)(d) consent on hypothetical future termination of parental rights proceedings concerning siblings under section 39.806(1)(i). Whether a termination based on constructive consent pursuant to section 39.801(3)(d) should be considered an involuntary termination for purposes of section 39.806(1)(i) is simply not at issue in this case.
[7] In this case, no argument has been presented to this Court concerning whether evidence must be received by the trial court on the manifest best interests issue where a constructive consent has been entered and no other party objects to the termination of parental rights. We therefore need not address that question.