HAZOURI, J.
T.H., the mother of A.H. and B.T., appeals from the lower court’s order denying her motion to set aside her consent to termination of parental rights. The parental rights of the children’s father were terminated following his failure to appear after a diligent search and publication and are not the subject of this appeal. T.H. asserts that her agreement to voluntarily surrender her parental rights pursuant to section 39.806(l)(a)(l), Florida Statutes (2010) [1] was conditioned upon A.H. and *152 B.T. being adopted by her sister who lived in Tennessee, which did not occur. Additionally, T.H. contends that the surrender documents required by section 39.806(l)(a)(l), were never identified in open court, never filed as required by the statute, and have never been located. We agree with T.H. and reverse with directions to the trial court to vacate the order terminating the parental rights of T.H.
On September 19, 2006, an attorney ad litem for the children filed a Petition for Termination of Mother’s Parental Rights. T.H. was willing to agree to the TPR if her children were adopted by their aunt who lived in Tennessee.
A status hearing was held on May 18, 2009. T.H. had asked her attorney not to file the surrender documents until it was certain that the children would be going to her sister. At the hearing, the following exchange took place between T.H.’s attorney and the court:
Attorney for DCF: Yes, Your Honor. This is the case — I believe the Mother was just to execute Surrenders today.
The Court: Yes—
T.H.’s Attorney: That’s correct. She has executed them and I have them in my file, and it is my understanding that the Home Study is very close to completion. I read some email today to show how close it was. But I am to hold these until everything has been approved and then I am supposed to file these with the Couri.
Attorney for DCF: Okay.
T.H.’s Attorney: But she is in the Department of Corrections custody and she does want to go and return back into D.O.C. custody.
The Court: All right.
T.H.’s Attorney: And I think Mr. Walsh is going to request whatever questions we have to ask Ms. T.H. today that we ask those questions of her and that you reseñe on them pending me submitting these Affidavits.
The Court: All right.
Attorney for DCF: I would agree with that.
(emphasis added). Mr. Walsh, the attorney ad litem, then conducted the following colloquy with T.H.:
Q: Could you state your name for the record, please.
A: T.H.
Q: Okay. And are you the mother of B.T. and A.H.?
A: Yes, sir.
Q: Okay. And have you had time to talk to your attorney today about this case?
A: Yes, sir.
Q: Have you talked to her about surrendering your parental rights?
A: Yes, sir.
Q: Okay. You have executed these surrender forms for your attorney. Do you understand that by signing these forms that you are agreeing to permanently give up your parental rights to the children?
A: Yes, sir.
*153 Q: Okay. Do you understand that the children, as a result of this proceeding, will then be adopted by hopefully your relatives?
A: Yes, sir.
[[Image here]]
Q: Okay. Are you signing these papers today of your own free will and because you believe it is in the best interest of your children?
A: Yes, sir.
Q: Okay. Do you need — are you satisfied with the services of your attorney today?
A: Yes, sir.
Q: Do you need any more time to talk to her about the case?
A: No, sir.
The court then clarified as follows:
The Court: But do you understand what you are doing today, if it turns out that doesn’t work, you have nothing to say about it anymore because you are completely out of the picture legally, do you understand that?
T.H.: Yes, sir.
Notably, the transcript of the May 18, 2009 hearing does not include copies of the surrender documents, nor state that they were distributed to the court or the DCF attorney. Further, DCF filed a Notice of Missing Surrenders, concluding that “there is no reason to believe that any surrender was ... ever filed with the circuit court in this matter.”
On August 27, 2009, the lower court authorized placement of the children in Tennessee with their aunt and uncle. However, the children’s case manager supervisor testified that while she had arranged to transport the children to their relatives in Tennessee
half an hour before I got to the airport, the relative called and said she couldn’t afford to take care of the kids, so don’t send them, so I had to tell the kids when I got to the airport that they weren’t going, and they’ve been waiting a year. So the aunt called back a couple days later and said that they worked something out, so we’re — it’s still pending!.]
Unfortunately, placement of A.H. and B.T. with their aunt never occurred.
On September 16, 2009, a Manifest Best Interests Hearing was held before the trial court. Neither T.H. nor her attorney was present at the hearing. DCF asked that the court find it was in the manifest best interests of the children that the parental rights of both parents be terminated. The court granted DCF’s request and instructed them to prepare a written order.
On October 16, 2009, the court issued two orders. The first was titled “Order on the Final Judgment of Termination of Parental Rights to the Children, A.H. and B.T., Based on Executed Voluntary Surrenders of Parental Rights by the Mother, T.H.”. It stated that T.H. “voluntarily surrendered her parental rights to the children, A.H. and B.T., on 5/18/2009, with the assistance of counsel.” The second order was titled “Order of Termination of Parental Rights and Permanent Commitment.” The order states:
a. On 5/18/2009, in accordance with Section 39.806(l)(a) Florida Statutes 2007, the mother, T.H., executed in proper form an Affidavit and Acknowledgment of Surrender, Consent, and Waiver of Notice as to the minor children A.H. and B.T. The surrenders were accepted by the Court on 5/1812009.
b. The mother voluntarily executed the written surrender of the minor children A.H. and B.T., and consented to the entry of an order giving custody to the Department of Children and Families for subsequent adoption and the Depart *154 ment is willing to accept custody of the children.
c. The surrender documents were executed in the presence of two witnesses and a notary public.
(emphasis added.)
On February 1, 2010, T.H. moved for a telephonic hearing, seeking to withdraw her consent to the termination of her parental rights. DCF and the attorney ad litem filed a joint response, stating that T.H.’s “parental rights were terminated based on her executing Affidavits of Surrender of her Parental Rights in open court on May 18, 2009.” Subsequently, the court held several evidentiary hearings and took testimony from T.H. and her former attorney.
During the hearings, the court noted that there was “a fundamental defect in the record in this case.” Ultimately, however, the court found
there is some room for [T.H.] to have misunderstood based upon those statements on the record by her attorney. But that that [sic] is not a ... legal basis to undue [sic] what has been done here. Because the Court clearly told her at the time of her plea, of the potential consequences, [including] her loss of parental rights if things didn’t follow through.
The court then issued an order denying T.H.’s motion to set aside her consent to the termination of her parental rights. The court explained that T.H.’s surrenders “may be withdrawn only after a finding by the court that the surrender and consent were obtained by fraud or under duress.” § 39.806(l)(a)(l), Fla. Stat. (2010). Further, the court determined that
mother does not allege duress and there is no evidence of duress. The mother must establish fraud by clear and convincing evidence. There is no evidence to support a finding of fraud. None of the elements of fraud have been established .... Mistake is not a sufficient legal basis for withdrawing of mother’s surrenders. The Court informed her of the consequences of her surrenders.
Appellate courts review the denial of a motion to set aside surrender of parental rights for an abuse of discretion. T.G. v. Dep’t of Children & Families, 9 So.3d 48, 49 (Fla. 4th DCA 2009) (citations omitted). “To terminate parental rights, the Department of Children and Families must establish: 1) the existence of one of the statutory grounds in Chapter 39; 2) that termination is in the child’s best interest; and 3) that it is the least restrictive means of protecting the child from harm.” A.B.E. v. Dep’t of Children & Families, 47 So.3d 347, 352-53 (Fla. 4th DCA 2010) (citing J.J. v. Dep’t of Children & Families, 886 So.2d 1046, 1048-49 (Fla. 4th DCA 2004)). Section 39.806(l)(a), Florida Statutes (2010), provides that grounds for termination of parental rights are established “[w]hen the parent or parents have voluntarily executed a written surrender of the child and consented to the entry of an order giving custody of the child to the department for subsequent adoption.” § 39.806(l)(a), Fla. Stat. (2010). “The surrender document must be executed before two witnesses and a notary public or other person authorized to take acknowledgments.” § 39.806(l)(a)(l).
In the instant case, the trial court erred in terminating T.H.’s parental rights under § 39.806(l)(a)(l), because the written surrenders were neither filed, nor examined, to determine if they comported with the statutory requirements. At the TPR hearing, T.H.’s counsel stated “[Mother] has executed the Surrenders on the children ... however we are going to hold them in abeyance.” The record confirms that the surrender documents were never filed and the attorneys present at *155 the hearing did not receive them. Accordingly, the statutory requirements of section 39.806(l)(a)(l), Florida Statutes, were not met. Without the surrender documents, there is no evidence as to what was contained within them or whether they were properly executed as required by section 39.806(l)(a)(l).
It is error to terminate parental rights when the parent has not executed the necessary surrender forms when DCF seeks to terminate parental rights pursuant to section 39.806(l)(a)(l). See In re R.W., 12 So.3d 905, 905 (Fla. 2d DCA 2009). While DCF cites Department of Children & Families v. A.S., 927 So.2d 204 (Fla. 5th DCA 2006), for the proposition that Florida law permits an oral surrender, it is not on point; the case did not involve a termination of parental rights under section 39.806(l)(a), Florida Statutes. Rather, the Fifth District examined termination of parental rights by implied or constructive consent under section 39.801(3)(d), Florida Statutes (2010). A.S., 927 So.2d at 205. In A.S., the court explicitly recognized the important distinction between termination of parental rights by implied consent and statutory termination of parental rights by written consent:
Further analysis reveals that voluntary termination under section 39.806(l)(a) requires consent by the parents that is altogether different from consent under section 39.801(3)(d). Specifically, consent under section 39.801(3)(d) is implied, presumed, or constructive consent that derives from the parent’s failure to appear. A voluntary termination proceeding, on the other hand, leaves nothing to presume, imply, or establish constructively because the voluntary surrender must be clear, expressed, unequivocal, and emanate directly from the parent.
Id. at 207-08 (internal citations omitted) (emphasis added).
DCF also relies on A.A. v. Department of Children & Families, 972 So.2d 1116 (Fla. 4th DCA 2008), to further argue that Florida courts recognize oral surrenders on the record. However, A.A. is distinguishable from the instant case. In A.A., “the document was executed in open court before a judge” pursuant to all of the statutory requirements. Id. at 1118. Execution of the surrender documents was witnessed by two people and the court conducted a thorough inquiry regarding the voluntariness of the mother’s decision. Id. at 1117. Conversely, in the instant case, the surrender documents were not executed in open court, were never filed, and it is unknown as to whether the docu: ments were witnessed and notarized.
Thus, the trial court erred in refusing to vacate its order terminating T.H.’s parental rights because the statutory requirements of section 39.806(l)(a)(l), Florida Statutes, were not met. We, therefore, reverse the orders terminating T.H.’s parental rights and remand for further proceedings consistent with this opinion.

Reversed and Remanded With Directions.

MAY and CIKLIN, JJ., concur.

. Section 39.806(l)(a)(l), Florida Statutes (2010), states as follows:
*152 (1) Grounds for the termination of parental rights may be established under any of the following circumstances:
(a) When the parent or parents have voluntarily executed a written surrender of the child and consented to the entry of an order giving custody of the child to the department for subsequent adoption and the department is willing to accept custody of the child.
1. The surrender document must be executed before two witnesses and a notary public or other person authorized to take acknowledgments.